900 F.2d 153
 52 Fair Empl.Prac.Cas. 885,
53 Empl. Prac. Dec. P 39,801, 59 Ed. Law Rep. 708,
29 Fed. R. Evid. Serv. 1301
 Linda J. HAWKINS, Appellant,
v.
HENNEPIN TECHNICAL CENTER, Joint Independent School District
# 287, Roger Lee, individually and in his official capacity
as Director of HTC, Ed Foley, individually and in his
official capacity as Personnel Director of HTC, and Ronald
M. Carter, individually and in his official capacity as
Superintendent of Dist. # 287, Appellees.
 Nos. 89-5107, 89-5320.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 9, 1989.
Decided April 5, 1990.
Rehearing and Rehearing En Banc Denied May 25, 1990.
 
 Robert J. Brenner, Minneapolis, Minn., for appellant.
 David S. Bartel, Minneapolis, Minn., for appellees.
 Before ARNOLD and MAGILL, Circuit Judges, FLOYD R. GIBSON, Senior Circuit Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 Linda Hawkins brought this lawsuit against her former employer, Hennepin Technical Center ("Center"), a Minnesota public educational institution, and two administrative employees of the Center, Roger Lee and Ed Foley,[1] alleging gender discrimination and unlawful retaliation following Hawkins's complaints of sexual harassment of herself and others at the Center. Hawkins claims relief under 42 U.S.C. Sec. 1983, Title VII of the 1964 Civil Rights Act, and the Minnesota Human Rights Act, Minn.Stat. Sec. 363.02(5), (6), and (7). The Title VII and Minnesota Human Rights Act claims were tried before a Magistrate pursuant to 28 U.S.C. Sec. 636(c), and the Sec. 1983 claim was submitted to a jury. The Magistrate directed a verdict in favor of Roger Lee, and the jury returned a verdict in favor of the other defendants on the Sec. 1983 claim. The Magistrate then entered judgment for the defendants on the plaintiff's Title VII and state-law claims.
 
 
 2
 On appeal, Hawkins argues that the Magistrate committed reversible error (1) by excluding several categories of evidence tending to show a climate of sexual harassment and retaliation at the Center, and (2) by not affording collateral-estoppel effect to findings of fact in a previous judgment against the Center for sexual harassment of a student by an instructor. Because the evidentiary exclusions were erroneous and deprived Hawkins of a full opportunity to present her case to the jury, we reverse and remand for a new trial. We direct the District Court to consider whether offensive collateral estoppel is appropriate in accordance with Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).
 
 I.
 
 3
 Hawkins was employed at the Center from July 1, 1977, through June 30, 1982. She began work as an off-campus vocational counselor but transferred to the Center's north campus in 1978. In late 1980 Hawkins began counseling a student who complained of sexual harassment by an instructor. In the early months of 1981 Hawkins brought the matter to the attention of various administrative officials; she was repeatedly informed that she should not become involved because the matter was to be addressed by the administration. Another vocational counselor, Diane Benson, also complained of sexual harassment to administrators during this period. Hawkins claims to have experienced some sexual harassment herself, prior to her 1978 transfer. Hawkins testified at trial that there were no criticisms of her work before she complained about harassment of herself and other women at the Center.
 
 
 4
 Later that term Hawkins was informed that she would be transferred, effective July 1, 1981, to the Center's south campus to fill a recently vacated position of Support Services Manager. Hawkins had worked at the south campus for nearly a year when on June 24, 1982, she and twenty-nine other employees were placed upon unrequested leaves of absence. Soon thereafter, on November 23, 1982, Hawkins filed a charge against the Center with the Minnesota Department of Human Rights. Although Hawkins later applied for other positions at the Center and asserted seniority-based "bumping" rights over a less senior employee, she was not offered any other position. Her recall rights under the relevant union contract expired June 30, 1985.
 
 
 5
 Hawkins began this lawsuit in December 1985. The complaint alleges that the 1981 transfer, the 1982 unrequested leave of absence, the denial of bumping rights, and the failure to recall before expiration of the contract in 1985 were due to her gender and in retaliation for her complaints of sexual harassment at the Center. The complaint also alleges that Hawkins was denied equal pay because of her gender.[2]
 
 
 6
 Addressing Hawkins's Title VII and state-law claims, the Magistrate concluded that the unfavorable employment decisions affecting Hawkins were legitimate and non-discriminatory. The Magistrate found that two men hired as vocational counselors in 1977 received higher starting salaries than Hawkins and two other women because of their prior experience. The Magistrate also found that Hawkins's 1981 transfer to a different job at a different location was an alternative to a projected lay-off due to financial problems at the school. Continuing financial problems led to the elimination of Hawkins's new position in 1982 in accordance with seniority rights under the union contract. The Magistrate further found that the denial of bumping rights and the failure to recall were both valid under the contract because Hawkins was not properly licensed for the positions she sought.
 
 
 7
 The Sec. 1983 claim was tried to a jury. The Magistrate directed a verdict in favor of Roger Lee, and the jury returned a verdict in favor of the Center and Ed Foley, corresponding with the Magistrate's conclusions that the employment decisions were legitimate and non-discriminatory.
 
 II.
 
 8
 As her first ground of appeal, Hawkins challenges the exclusion of several categories of evidence of sexual harassment of herself and others at the Center. Before trial the Magistrate granted defendants' motion in limine prohibiting Hawkins from introducing any evidence of alleged acts of sexual harassment committed against herself or others. The Magistrate reasoned that such evidence was not relevant because Hawkins made no formal allegation of sexual harassment against any individual defendant: "evidence that she was subjected to sexual harassment by someone else some years before events relevant to the liability of these Defendants ... can in no way be in consequence to determination of whether or not Plaintiff was laid off, denied bumping rights, not recalled or otherwise discriminated [against] in terms and conditions of employment because of her sex." Transcript (Tr.) 7-8. Further, the Magistrate considered evidence of sexual harassment of others irrelevant beyond the bare fact that a complaint was made: "The truth of the complaints is not relevant to Plaintiff's claims, and beyond characterizing the complaints as pertaining to sexual harassment, the details of the alleged complaints are not relevant." Tr. 10.
 
 
 9
 The Magistrate also granted a second motion in limine prohibiting Hawkins from making any reference to previous litigation between former students and the Center over alleged acts of sexual harassment. In Smith, et al. v. Hennepin Technical Center, et al., Civil No. 4-85-411, 1988 WL 53400 (D.Minn. May 26, 1988), the District Court (Rosenbaum, J.) addressed claims that Joann Trader and Karen Smith experienced sexual harassment and reprisals at the Center from 1981 through 1984. The Court denied relief to Smith but found that Trader had proved unfair discrimination, supporting this conclusion with extensive findings of fact in a sixty-three-page opinion. Hawkins requested that these findings of fact be given collateral-estoppel effect in her own suit, or, in the alternative, that she be allowed to present evidence of those incidents. The Magistrate instead granted defendants' second motion in limine: "The Court fails to see how evidence of this litigation commenced by two students alleging specific acts of sexual harassment has a tendency to prove that sexual discrimination against Plaintiff in terms and conditions of her employment is more probable than not. Prior litigation by the students involved allegations of fact unrelated to Plaintiff's claims, and ... the danger of unfair prejudice, the confusion of issues and misleading the jury far outweighs the probative value of the evidence...." Tr. 14-15.
 
 
 10
 A trial court's exclusion of evidence under Fed.R.Evid. 402 and 403 is entitled to substantial deference on review. Warner v. Transamerica Ins., 739 F.2d 1347, 1350 (8th Cir.1984). In this instance, however, the Court's rulings unfairly prevented Hawkins from proving her case. In Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir.1988), we reversed similar evidentiary exclusions in an employment-discrimination suit. Although that case involved a plaintiff who claimed to have suffered discrimination at his workplace on account of his race, and not a claim of unlawful retaliation for opposition to discriminatory practices, the reasoning in Estes is compelling here: "The effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of its own motives.... Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices--evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." 856 F.2d at 1103.
 
 
 11
 Because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial. See McDonnell Douglas v. Green, 411 U.S. 792, 804-05, 93 S.Ct. 1817, 1825-26, 36 L.Ed.2d 668 (1973); Patterson v. Masem, 774 F.2d 251, 255 (8th Cir.1985) (history of segregation in a school district may be evidence of the district's discriminatory employment practices). Thus, it is not sufficient that the Magistrate allowed testimony that complaints of sexual harassment were made while disallowing testimony concerning the activities complained of and the Center's disposition of the complaints.[3] Hawkins's claim is unlawful retaliation. But an atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases. Hawkins is entitled to present evidence of such an atmosphere.
 
 
 12
 Appellant's Brief at pages 6-12 lists offers of proof denied by the Court. Of these, we think the improperly excluded evidence to be admitted on remand may be grouped into three categories: (1) some details of the nature of the alleged harassment, (2) all complaints made to Center supervisors, and (3) disposition of the complaints by the administration, particularly evidence of retaliation or inaction. We are mindful that despite these evidentiary exclusions Hawkins did present a "significant amount of testimony of widespread complaints of sexual harassment" at the Center. Appellant's Brief 6. The proceedings below took twelve days, and we have before us an eight-volume trial transcript. Nonetheless, evidence of retaliation or inaction following the complaints is plainly relevant. Further, some detail about the alleged harassment is necessary to provide a context for the complaints made to administrative personnel. Limiting the proof to bare allegations that complaints of sexual harassment were made, without some indication of the nature of the underlying incidents, unfairly prevented Hawkins from fully presenting her claim.
 
 III.
 
 13
 Some of the excluded testimony paralleled the findings of fact in Smith, supra. Hawkins claims these findings of fact should be afforded collateral-estoppel effect in her own lawsuit; that is, on remand, she asks that the defendants be precluded from offering evidence tending to disprove those findings. Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery, 439 U.S. at 326, 99 S.Ct. at 649.
 
 
 14
 Because the Magistrate excluded the findings as irrelevant and unduly prejudicial, this issue was not addressed below. Parklane Hosiery grants trial courts broad discretion to determine when offensive collateral estoppel should be applied. Id. at 331, 99 S.Ct. at 651. On remand the District Court should consider the discussion in Parklane Hosiery concerning the offensive use of collateral estoppel, and determine whether it is appropriate in this case. We note that none of the circumstances justifying reluctance to allow the use of offensive collateral estoppel appears to be present here. Appellees urge that Hawkins could easily have joined in the previous litigation, a consideration disqualifying Hawkins from now urging estoppel. We are not so sure. The students brought a lawsuit over alleged sexual harassment at the Center. Hawkins claims she was retaliated against for complaining of sexual harassment at the Center. The lawsuits are related, but the Court would have been within its rights to exercise its discretion to deny Hawkins leave to intervene.
 
 
 15
 We reverse the judgments of the District Court and remand for further proceedings in accordance with this opinion.
 
 
 
 [1]
 During the trial Hawkins voluntarily dismissed her claims against a third defendant, Superintendent Ronald M. Carter
 
 
 [2]
 Hawkins does not claim that the denial of equal pay was in retaliation for her opposition to sexual harassment, because the alleged wage disparity predates any confrontations between Hawkins and her supervisors over sexual harassment at the Center. Accordingly, because the erroneously excluded evidence has no relevance to this issue, this claim is not to be presented again on remand
 
 
 [3]
 An illustration may be helpful. The following colloquy between the Court and plaintiff's counsel concerning the 1978 transfer appears in the pre-trial proceedings, Tr. 18:
 MR. BRENNER: Now, how do you want me to refer to what happened initially with Rossbach, because it's her claim that--
 THE COURT: She asked to be transferred.
 MR. BRENNER: Because he harassed her. She complained about Rossbach's treatment of her to Eggert, Eggert didn't do anything--
 THE COURT: Ask her. Ask her why she transferred and she can say, "Because I felt I was being sexually harassed," and then drop it.