_____

No. 95-1381
_____

Melvin Eugene Duckworth,           *
                                   *
               Appellee,           *
                                   *
     v.                            *
                                   * Appeal from the United States
John H. Ford,                      * District Court for the
                                   * Western District of Missouri
               Appellant.          *
                                   *
Richard C. Rice,   *
                                   *
               Defendant.          *


                       _____

            Submitted:  November 16, 1995

               Filed:  May 15, 1996
                       _____

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge,
     and FAGG, Circuit Judge.
                       _____

McMILLIAN, Circuit Judge.


     John H. Ford appeals from a final judgment entered in the United
States District Court[1] for the Western District of Missouri, upon a jury
verdict, in favor of Melvin Eugene Duckworth in this civil rights action.
For reversal, Ford argues there was insufficient evidence as a matter of
law to support the jury verdict and that the district court abused its
discretion in admitting into evidence certain information about the
judgment in

---

[1]The Honorable William A. Knox, United States Magistrate Judge
for the Western District of Missouri.  The parties consented to
trial of the case before a magistrate judge pursuant to 28 U.S.C.
§ 636(c).

another case involving Ford. For the reasons discussed below, we affirm the judgment of the district court.

In 1988 Duckworth and Ford were majors in the Missouri state highway patrol. The superintendent was about to retire, and Ford and C.E. Fisher were rivals for the position. Duckworth supported Fisher. In early 1988 Ford requested an employee of the highway patrol's communications division to periodically "sweep" his office telephone. In May 1988 the employee discovered a device of some kind on Ford's office telephone. The employee removed the device and reported the discovery to Ford. Ford asked the employee not to tell anyone about the device; however, the employee later told his supervisor about the device. Ford suspected the device could have come from the highway patrol's Division of Drug & Crime Control (DDCC), which Duckworth commanded. Ford told several fellow highway patrol officers about the discovery of the device and also reported the discovery to the superintendent. In June 1988 the governor nominated Ford as superintendent. Ford reported the discovery of the device to the state director of public safety and the assistant director of public safety.

In early July 1988 Duckworth and Fisher heard that there were rumors circulating within the highway patrol that they were "in trouble" and would be demoted and transferred because they had "bugged" or wiretapped Ford's office telephone. Duckworth talked to the retiring superintendent about the rumors and the retiring superintendent told Duckworth that the device was not a "bug." A highway patrol criminalist and the FBI later identified the device as a "click suppressor," a type of telephone equipment and not a monitoring device.

At a mid-July 1988 staff meeting the retiring superintendent described the wiretap rumors as Ford's problem. Duckworth and Fisher requested an FBI investigation, but Ford denied the request. Ford officially became the acting superintendent on August 1, 1988.

The wiretap rumors continued to circulate through the fall and winter of 1988. In 1989 the state senate refused to confirm Ford's appointment until litigation involving Ford and another member of the highway patrol had been resolved. The jury in that case found against Ford, and the governor withdrew Ford's nomination.

Duckworth testified that the wiretap rumors adversely affected his physical and mental health. He feared that his career had been ruined by the rumors, and he was under considerable stress and very depressed. Duckworth suffered a heart attack in November 1988 and had bypass surgery in June 1989. He took long-term disability status and left the highway patrol in May 1990.

Duckworth subsequently filed this civil rights action in federal district court alleging that Ford had violated his first amendment rights by spreading the wiretap rumors in retaliation for his supporting Fisher for the superintendent position and that this retaliation caused his constructive discharge. The district court denied defense motions for summary judgment on the basis of qualified immunity, holding that Duckworth's opposition to Ford and his support of Fisher was protected speech, even if he had a personal interest in Fisher's success, the law regarding first amendment retaliation claims was clearly established in 1988, and Ford was not entitled to judgment as a matter of law on the issue of motive. We affirmed. Duckworth v. Ford, 995 F.2d 858 (8th Cir. 1993).

At trial, Duckworth, Ford, several highway patrol officers, state investigators, Duckworth's wife, and his doctors testified about the events at issue and their effect on Duckworth's physical and mental health. In addition, the district court admitted into evidence certain information about the litigation and jury verdict in favor of the plaintiff and against Ford in another case, Darnell v. Ford, 903 F.2d 556 (8th Cir. 1990). The jury found in favor of Duckworth and against Ford and awarded Duckworth damages in the

amount of $1,176,000.00.  Post-trial motions for judgment as a matter of law or for new trial were denied.  This appeal followed.

First, Ford argues there was insufficient evidence as a matter of law to support the jury verdict that he circulated the wiretap rumors.  He argues that the jury verdict could only have been the result of speculation and conjecture because there was no evidence that he accused Duckworth of tapping his office telephone, or that he circulated the wiretap rumors or urged any of his fellow highway patrol officers to circulate such rumors, or that he had any motive to retaliate against Duckworth for supporting Fisher.

Ford moved for judgment as a matter of law at the close of the plaintiff's case but failed to renew the motion at the close of all the evidence.  Ford's failure to renew the motion for judgment as a matter of law at the close of all the evidence operated as a waiver of the sufficiency of the evidence issue. Fed. R. Civ. P. 50(b); see, e.g., Smith v. Ferrel, 852 F.2d 1074, 1075-76 (8th Cir. 1988).  However, the sufficiency of the evidence was raised in the alternative motion for new trial which was denied by the district court. See, e.g., Harris v. Zurich Insurance Co., 527 F.2d 528, 529-30 & n.1 (8th Cir. 1975).  We have reviewed the record and hold the district court did not abuse its discretion in denying the motion for new trial on the ground of insufficient evidence. There was evidence that Ford knew that Duckworth supported Fisher; Ford told several highway patrol officers that he had found a device on his office telephone and suggested that the device could have come from DDCC, the division commanded by Duckworth; Ford took no action to counter the wiretap rumors once he learned that his office telephone had not been tapped; and Duckworth was injured by the wiretap rumors.  The jury could have reasonably inferred from the evidence that Ford acted with the intent to retaliate against Duckworth for supporting Fisher.

Ford next argues the district court abused its discretion in admitting into evidence certain information about the judgment in another case, Darnell v. Ford, as evidence of other wrongs or acts under Fed. R. Evid. 404(b).  He argues the two cases are not factually similar and that this evidence improperly suggested that he was someone who had a propensity to retaliate, which is exactly what Fed. R. Evid. 404(b) prohibits.  Ford also argues that the district court should have excluded this evidence because its probative value was substantially outweighed by the danger of unfair prejudice.

We hold the district court did not abuse its discretion in admitting this evidence.  Under Fed. R. Evid. 404(b), evidence of other wrongs or acts is admissible if it is "(1) relevant to a material issue, (2) established by a preponderance of the evidence, (3) more probative than prejudicial, and (4) similar in kind and close in time to the events at issue."  United States v. Hazelett, 32 F.3d 1313, 1319 (8th Cir. 1994), citing King v. Ahrens, 16 F.3d 265, 268 (8th Cir. 1994).  The two cases are factually similar.  In Darnell v. Ford the plaintiff was a captain in the state highway patrol who claimed that Ford had violated his first amendment right to free speech by recommending his demotion because he had opposed Ford's candidacy for superintendent.  The jury found for the plaintiff.  The events at issue in Darnell v. Ford occurred at about the same time as the events at issue in the present case.  Evidence that Ford had retaliated against someone else at about the same time and under similar circumstances is evidence from which the jury could reasonably infer that Ford had a similar motive or intent to retaliate against Duckworth.  Cf. Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988) (other incidents of employment discrimination).  We cannot say that its probative value was substantially outweighed by its prejudicial impact.  We note that the district court cautioned the jury about the limited relevance of the judgment in Darnell v. Ford before the opening statements and again before the cross-examination of William

-5-

Darnell, who testified as a witness in the present case and who was the plaintiff in <u>Darnell v. Ford</u>.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.