**Harvey L. KUNZMAN, Plaintiff,**

v.

**ENRON CORPORATION, Enron Energy Companies, and Northern Natural Gas Company, Defendants.**

**No. C 94–3044–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Oct. 2, 1996.

---

Lawrence L. Marcucci of Shearer, Templer & Pingel, P.C., in Des Moines, IA, for plaintiff.

Janet L. Lachman and C. Robert Vote of the Enron Litigation Unit in Houston, TX, and Neven J. Mulholland of Johnson, Erb, Bice & Carlson, P.C., in Fort Dodge, IA, for defendants.

# 856

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................856

II. LEGAL ANALYSIS ...........................................857
 A. Kunzman's Motion In Limine ............................857
 1. Testimony of former co-employees .................857
 2. Evidence of failure to complete corrosion technician training ............861
 B. Enron's Motion In Limine .............................862
 1. Evidence of a "pattern" of discrimination ...........862
 2. Co-employee testimony of their treatment by Enron ...................863
 3. The angry remark of Mr. McGillivray ..............865
 4. References to Enron's size and wealth .............867

III. CONCLUSION ...............................................867

---

## ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE

BENNETT, District Judge.

In this employment discrimination lawsuit, the plaintiff alleges his former employer discriminated against him on the basis of age in violation of the federal Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, when the plaintiff was terminated during a reduction in force, or RIF. Both the plaintiff and the defendants have filed motions in limine prior to trial. The plaintiff seeks to preclude testimony of his former co-employees concerning his attitude and performance prior to his termination and evidence that he failed to complete training as a corrosion technician during his employment.[1] Defendants seek to preclude various kinds of evidence, consisting of references to any "pattern" of laying off "older, more senior, more highly paid employees"; evidence that other employees were victims of age discrimination; references to certain remarks of a supervisory employee; references to defendants' size and wealth; references to witnesses not called; and references to pretrial motions to limit or preclude testimony.

### I. INTRODUCTION AND BACKGROUND

Plaintiff Harvey L. Kunzman was an Operator II at the Northern Natural Gas facility in Ventura, Iowa. Northern Natural Gas is affiliated with Enron Corporation, and, for the purposes of this ruling, the defendants will therefore be referred to collectively as "Enron." During 1992, Enron decided to modernize its plant at Ventura. As the result of those plans to modernize, Kunzman and five other individuals, out of a work force of thirty-six at the Ventura facility, were informed in December of 1992 that they were "at risk" of being laid off within the next year. In June of 1993, eight individuals, including Kunzman, were terminated after they were declared "surplus" to Enron's requirements at the Ventura facility.

Trial in this matter is set to begin on October 7, 1996. The parties have filed pretrial motions in limine concerning evidence each anticipates the other will attempt to offer at trial. Kunzman's motion in limine, filed September 5, 1996, seeks to preclude the testimony of some of Kunzman's former co-employees concerning his past job performance and attitude. Kunzman seeks to preclude such evidence on the ground that these witnesses were not properly disclosed in response to discovery requests and on the further ground that testimony concerning his attitude and job performance is inconsistent with Enron's proffered reasons for terminating Kunzman in the course of the RIF, which Kunzman claims have consistently and only been that he lacked certain skills. Hence,

---

1. A third matter raised in plaintiff's motion in limine, the admissibility of certain audiotapes and transcripts, has been dealt with in a separate order reflecting the consensus reached between the parties concerning what evidence derived from the audiotapes will be offered and how it will be treated. Thus, that portion of plaintiff's motion in limine is no longer at issue here.

Kunzman argues that introduction of such testimony would be unduly prejudicial and outweighs any probative value it might have. Kunzman also seeks to preclude evidence that he failed to complete training to become a corrosion technician on the ground that such evidence is a "red herring" offered for the improper purpose of demonstrating a supposed lack of initiative on his part. Kunzman asserts that Enron's discovery responses indicate that such training would have made no difference to his continued employment prospects, because two other "fully competent" corrosion technicians were already employed at the Ventura facility. Thus, Kunzman asserts that such evidence will confuse the issues and unfairly prejudice his case.

For its part, Enron filed a motion in limine on September 9, 1996, also seeking to preclude in advance various types of evidence. First, Enron seeks to preclude references to any "pattern" of laying off "older, more senior, more highly paid employees," because no evidence of any such "pattern" exists, and because Kunzman was among the less senior employees at Ventura and was precisely at the median income level. Next, Enron seeks to preclude evidence that other employees were victims of age discrimination. Enron argues that evidence of alleged age discrimination against persons other than Kunzman is inadmissible to support Kunzman's claim of age discrimination, and is also unduly prejudicial to Enron. Enron asserts that such evidence improperly suggests that if Enron discriminated against other people, it must also have discriminated against Kunzman, and furthermore improperly suggests that Enron should be found liable whether or not Enron discriminated against Kunzman, because Enron must have discriminated against someone.[2] Furthermore, Enron asserts such evidence would cause confusion and delay as the trial degenerates into various case-by-

case mini-trials. Enron also objects to any reference to a remark allegedly made by "Mac" McGillivray, Kunzman's supervisor, that he would "fry [Kunzman's] ass anyway" if he was compelled to change a performance evaluation of Kunzman. Enron asserts this statement is double hearsay, prejudicial, and not probative of age discrimination, because, as to this last ground, it did not occur in the context of Kunzman's termination, but in the context of a prior performance evaluation, in which context it suggests only that McGillivray "was not a fan of the Plaintiff's."[3] Although Enron asserts other matters should be excluded, which Kunzman does not appear to resist,[4] the last fighting issue raised by Enron's motion in limine is whether Kunzman should be allowed to present any references to Enron's size or wealth. Enron flatly asserts such evidence is not relevant to any issue in the trial, citing both *Fed.R.Evid.* 401 and *Fed.R.Evid.* 403.

The court will consider the admissibility of each of these kinds of contested evidence, and the opposing party's assertions for admissibility, *seriatim* below.

## II. LEGAL ANALYSIS

### A. Kunzman's Motion In Limine

#### 1. Testimony of former co-employees

Kunzman makes two challenges to the admissibility of the testimony of former co-employees. The broadest of these challenges is that Enron failed to disclose several of these co-employees in response to discovery requests, and thus is engaging in "trial by ambush." Kunzman's second challenge is more substantive: it is that the testimony of these witnesses concerning Kunzman's attitude and job performance is contrary to Enron's supposedly consistent assertion that the legitimate, non-discriminatory reason for his termination in the course of the RIF was his

---

2. Enron describes this latter kind of evidence as supporting only a "where there's smoke, there's fire" argument, and thus is violative of *Fed. R.Evid.* 402, while the former kind of evidence, the "me too" evidence, is assertedly violative of *Fed.R.Evid.* 404(b).

3. Enron asserts this evidence should be excluded under *Fed.R.Evid.* 401 and 402.

4. Enron also seeks to exclude references to witnesses not called and references to pretrial motions to limit or preclude testimony. Kunzman has not resisted these portions of Enron's motion in limine, and the court would not permit such evidence or references to any such matters unless and until it was demonstrated to be relevant. *Fed.R.Evid.* 401, 402.

lack of certain skills necessary to the modernized Ventura facility and its new "team" approach to staffing, not past performance or attitude.

■ As to Kunzman's first challenge to the admissibility of the testimony of former co-employees, Enron asserts that there has been no "trial by ambush," because all of the co-employees it anticipates offering as witnesses were disclosed to Kunzman in response to a discovery request for identification of persons with information relevant to his allegations or another discovery request for identification of persons who were employed at the Ventura facility at the time of Kunzman's termination. In answer to the interrogatory concerning persons with information relevant to Kunzman's allegations, Enron had listed several people by name as well as "any other person identified in documents produced during discovery." Enron's Response to Kunzman's First Set Of Interrogatories, Interrogatory No. 2. Hence, Enron contends that anyone listed as an employee at the Ventura facility in discovery responses was included in the response to the interrogatory concerning persons with knowledge of Kunzman's allegations. Furthermore, Enron argues, it objected to Kunzman's interrogatory requesting identification of every person who might be called to serve as a witness, and Kunzman never moved to compel complete responses to that discovery request.

On September 24, 1996, the parties were given leave to file an Order On Final Pretrial Conference in which each disclosed its witness and exhibit lists. From the defendant's witness list, it is apparent that only two witnesses could be the subject of this portion of Kunzman's motion in limine, Jim Roseland and Mike Quinn.[5] These two persons were not listed in response to Kunzman's discovery requests for identification of Enron's "witnesses" nor were they specifically listed in response to his discovery requests for identification of persons with knowledge of Kunzman's allegations, but both are now list-ed as persons likely to testify concerning Kunzman's "performance and attitude," in the case of Mr. Roseland, or "performance, skills and attitude," in the case of Mr. Quinn. Both were listed, however, by Enron as employees at the Ventura facility in response to Kunzman's discovery request for identification of employees. Furthermore, both were identified *by Kunzman* in response to Enron's discovery requests as persons with knowledge of Kunzman's performance.

■ The Eighth Circuit Court of Appeals has observed, on more than one occasion, that " '[t]he power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential' to judicial management of the case." *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995). A trial court's evidentiary rulings are reviewed for abuse of discretion. *Mawby v. United States,* 999 F.2d 1252, 1254 (8th Cir.1993); *Mills v. Des Arc Convalescent Home,* 872 F.2d 823, 826 (8th Cir.1989).

The Eighth Circuit Court of Appeals recently noted the following about tests to determine whether purportedly undisclosed witnesses should be allowed to testify:

Two similar tests, or sets of factors, have been used by this court to determine whether a witness's testimony should be excluded *if that witness was not named in the pretrial order.* The first test looks at "the reason for failing to name the witness, the importance of the witness's testimony, the opposing party's need for time to prepare for the testimony, and whether a continuance would be useful." *Patterson v. F.W. Woolworth Co.*, 786 F.2d 874, 879 (8th Cir.1986); *see also Citizens Bank v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir.1994). The second test looks at:

(1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified;

---

**5.** Other persons are listed in Enron's witness list who were not disclosed in response to the discovery requests for identification of witnesses or for disclosure of persons with knowledge of Kunzman's allegations, but the witness list disclosures do not indicate these persons will testify concerning the challenged matter of Kunzman's attitude and performance. Only Mr. Roseland and Mr. Quinn therefore fit within the parameters of this portion of Kunzman's motion in limine.

(2) the ability of that party to cure the prejudice;

(3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court;

(4) bad faith or willfulness of the party failing to comply with the court's order.

*Morfeld v. Kehm,* 803 F.2d 1452; 1455 (8th Cir.1986).

*Marti v. City of Maplewood, Mo.,* 57 F.3d 680, 683 (8th Cir.1995) (emphasis added). This court deems it appropriate to consider these same factors when the assertion is that the witnesses, although disclosed in the final pretrial witness list, were assertedly not previously disclosed in response to discovery requests.

In *Marti,* the Eighth Circuit Court of Appeals found that under either test, the trial court had not abused its discretion in precluding the testimony of a certain witness. *Marti,* 57 F.3d at 683. However, although the Eighth Circuit Court of Appeals has recognized two tests, it appears to have made a distinction in the applicability of these tests between expert and non-expert witnesses. The factors identified in *Patterson* were applied in a case involving an expert witness, but those identified in *Morfeld v. Kehm,* 803 F.2d 1452, 1455 (8th Cir.1986), were applied to a case involving a non-expert witness. In *Mawby v. United States,* 999 F.2d 1252 (8th Cir.1993), the Eighth Circuit Court of Appeals stated what this court deems to be the general rule on exclusion of "undisclosed" fact witnesses, that "use of an undisclosed witness should seldom be barred unless bad faith is involved." *Mawby,* 999 F.2d at 1254 (citing *Mills v. Des Arc Convalescent Home,* 872 F.2d 823, 826 (8th Cir.1989)). In both *Mawby* and the case on which it relies, the undisclosed witnesses testified as to factual matters. *See Mawby,* 999 F.2d at 1254 (meteorologist testified as to weather conditions on date in question); *Mills,* 872 F.2d at 826 (postmaster testified as to delivery date of right-to-sue letter). This first portion of Kunzman's motion in limine pertains specifically to non-expert, fact witnesses, so that the court deems the *Morfeld* factors most

appropriate. Nonetheless, under either test, this court finds that the testimony of Mr. Quinn and Mr. Roseland concerning Kunzman's attitude and performance should *not* be precluded.

The court will return to the question of "prejudice" within the meaning of *Fed. R.Evid.* 403 below, when it turns to Kunzman's substantive challenge to the testimony of these witnesses, but for now it is apparent that Kunzman can assert no "surprise in fact" as to the likely testimony of Mr. Quinn and Mr. Roseland. *Marti,* 57 F.3d at 683 ("prejudice or surprise in fact" is the first factor to consider in a challenge to an undisclosed witness, citing *Morfeld,* 803 F.2d at 1455). Kunzman also identified these witnesses as having knowledge of his performance. It is disingenuous, at best, for Kunzman to assert that Enron has not properly disclosed these witnesses in response to Kunzman's discovery request for identification of witnesses, when Enron objected to that interrogatory and Kunzman never moved to compel a response. On the other side of the coin, Enron could, and the court believes, should, have been more forthcoming in supplementing its response to the interrogatory concerning persons with knowledge of Kunzman's allegations, instead of relying on the blanket statement that "any other person identified in documents produced during discovery" as providing sufficient disclosure of these witnesses. Thus, the identity of the witnesses who might testify as to attitude and performance is not a surprise in fact, although which specific witnesses, out of several potential ones, would actually provide such testimony at trial may have been somewhat uncertain.

It is also disingenuous for Kunzman to assert that performance and attitude have never been identified as reasons for Enron's decision to terminate Kunzman, despite Kunzman's assertion of carefully edited portions of one discovery response concerning only "skills" and excerpts from Enron's position statements before administrative agencies. The full response to the interrogatory in question, Interrogatory No. 10 of Kunzman's First Set of Interrogatories, which is part of this litigation, identified "[i]ndividual

performances, employee skills and the future needs of the district" as relevant to Enron's decision to terminate Kunzman. Enron's response to Interrogatory No. 15 also identified "Plaintiff's performance, skills, and attitude" as considerations in Kunzman's termination. Again, Kunzman cannot realistically assert surprise in fact as to the content of co-employees' testimony concerning attitude and performance. *Marti*, 57 F.3d at 683 (surprise in fact is one factor in the analysis).

Enron's reasons for not making a supplemental disclosure regarding Quinn and Roseland or the nature of their testimony do not amount to bad faith, because Enron did provide discovery responses that identified these persons, although somewhat indirectly, as persons with knowledge of Kunzman's allegations, and did specifically identify attitude and performance as factors in its decision to terminate Kunzman. *Id.* (bad faith is another factor in determining whether an undisclosed witness should be excluded, citing *Morfeld*, 803 F.2d at 1455); *Mawby*, 999 F.2d at 1254 (exclusion of an undisclosed witness should not occur in the absence of bad faith). Also, there has been no failure on Enron's part to comply with any court order to disclose witnesses, which might also constitute bad faith. *Id.* (bad faith in failing to comply with court orders is a factor under *Morfeld*). Because there is an absence of surprise in fact, *Marti*, 57 F.3d at 683 (citing *Morfeld* as considering surprise in fact), and an absence of bad faith on Enron's part, *Mawby*, 999 F.2d at 1254 ("use of an undisclosed witness should seldom be barred unless bad faith is involved"), the court will not preclude the testimony of Mr. Quinn or Mr. Roseland, unless a Rule 403 balancing of probative value and prejudice dictates otherwise.

 However, such a balance pursuant to Rule 403 does not require exclusion of the "attitude" and "performance" testimony of these witnesses. Under *Fed.R.Evid.* 403, even "relevant, admissible evidence may still be excluded if its probative value is 'substantially outweighed by the danger of unfair prejudice.'" *United States v. Darden*, 70 F.3d 1507, 1538 (8th Cir.1995) (quoting *Fed. R.Evid.* 403), *cert. denied,* — U.S. —, 116 S.Ct. 1449, 134 L.Ed.2d 569 (1996). As the Eighth Circuit Court of Appeals has observed,

> The starting point for a court attempting to balance probative value against unfair prejudice under Rule 403 is the probative value of the challenged evidence. The more probative a piece of evidence is, the more difficult it will be for a defendant to show that such probativity is substantially outweighed by unfair prejudice.

*Darden*, 70 F.3d at 1538. This court finds that the same starting point, and the same consequence of great probative value, are appropriate if other factors enumerated under Rule 403, such as "confusion of the issues, or misleading the jury, or ... considerations of undue delay, waste of time, or needless presentation of cumulative evidence," *Fed.R.Evid.* 403, are at issue instead of the more common counterweight to probative value, prejudice. *See United States v. Rabins*, 63 F.3d 721, 726 (8th Cir.1995) ("Rule 403 grants the trial court the discretion to exclude relevant evidence when its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury."), *cert. denied sub nom. Johnson v. United States*, — U.S. —, 116 S.Ct. 1031, 134 L.Ed.2d 109 (1996). The Eighth Circuit Court of Appeals "accord[s] great deference to the District Court's application of the Rule 403 balancing test, and will reverse only if the Court committed a clear abuse of discretion." *Rabins*, 63 F.3d at 726; *United States v. Mitchell*, 31 F.3d 628, 631 (8th Cir.1994).

Kunzman's assertion that testimony concerning his attitude and performance has no probative value, because Enron has consistently and only relied upon Kunzman's lack of "skills" as the basis for his termination, is undercut by Enron's discovery responses identifying both attitude and performance as relevant factors in Kunzman's termination. The testimony of Mr. Quinn and Mr. Roseland, as well as that of other witnesses, concerning Kunzman's attitude and performance is therefore probative of issues in the case. *Darden*, 70 F.3d at 1538 (starting point of Rule 403 balancing is probative value). Kunzman asserts that he "would be severely prejudiced if Defendant is permitted to pa-

rade co-employees to the stand claiming that [his] attitude and past performance were so egregious that his termination was a foregone conclusion," and that he is prejudiced by "an '11th' hour defense strategy to smear Mr. Kunzman before the jury." Plaintiff's *Brief In Support Of Its Motion In Limine*, pp. 6–7. The court finds that two witnesses make a very short parade and Kunzman has had adequate notice that his attitude and performance were issues relevant to Enron's decision to terminate Kunzman. The evidence concerning Kunzman's attitude and performance may be damaging, but it is not a surprise, it is probative of Enron's reasons for terminating Kunzman, and it is not *unfairly* prejudicial. *Fed.R.Evid.* 403 (balancing probative value against "the danger of unfair prejudice"). Mr. Quinn and Mr. Roseland will be permitted to testify concerning Kunzman's attitude and performance.

■ The court has not forgotten that another factor in the admissibility of undisclosed witnesses is whether the opposing party will have adequate opportunity to prepare for the testimony of the witnesses. *Marti*, 57 F.3d at 683 (ability to cure surprise or prejudice is another factor to consider).[6] Although the court finds Enron's failure to disclose Mr. Quinn and Mr. Roseland by name as persons with knowledge of Kunzman's allegations does not amount to bad faith, the court does find that the non-disclosure was a distinct "bending" of the rules on supplementation of responses on the tenuous ground that the addendum of "any other person identified in documents produced during discovery" would excuse non-disclosure of specific persons.[7] Furthermore, the court finds that any surprise as to the specific

witnesses likely to testify as to attitude and performance is attributable to Enron's failure to supplement discovery on the rather dubious ground of the "any other person" response. Any surprise is admittedly lessened by disclosure of Mr. Quinn and Mr. Roseland by name as likely witnesses in Enron's witness list some two weeks before trial. Consequently, Kunzman need no longer guess which former co-employees will be testifying. However, Kunzman may not have had a realistic opportunity to determine the specific content of these witnesses' testimony, since discovery has long been closed. As an alternative to exclusion of the witnesses, which the court finds is inappropriate in this case, the court will require that Enron bear the costs of curative action. If Kunzman requests depositions of these witnesses, Enron must make these witnesses available for deposition in advance of their testimony in court, even if such depositions must be taken during trial, at Enron's expense. Enron must pay the travel expenses of these witnesses, the costs of the depositions and transcripts, and any attorney's fees incurred by Kunzman in taking the depositions. Thus, any "surprise" will be cured, *id.* (ability to cure surprise is a factor in the analysis), and at Enron's expense.

With these requirements imposed, that portion of Kunzman's motion in limine seeking to preclude testimony of witnesses concerning his attitude and performance is **denied.**

### 2. *Evidence of failure to complete corrosion technician training*

■ The portion of Kunzman's motion in limine seeking to preclude evidence that he

---

**6.** This factor is considered under either the *Morfeld* test, where it is cast as "the ability of [the opposing] party to cure the prejudice," *Morfeld*, 803 F.2d at 1455; *see also Marti*, 57 F.3d at 683 (quoting *Morfeld*), or under the *Patterson* test, where it is phrased as "the opposing party's need for time to prepare for the testimony, and whether a continuance would be useful." *Patterson*, 786 F.2d at 879; *see also Marti*, 57 F.3d at 683 (citing *Patterson* factors as one applicable test).

**7.** The court reminds the parties that the purpose of discovery is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter &*

*Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947)); *Hickman*, 329 U.S. at 501, 67 S.Ct. at 388–89 ("The various instruments of discovery now serve (1) as a device . . . to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.").

failed to complete training as a corrosion technician may be dealt with more briefly. Kunzman asserts that such evidence is a "red herring," because completion of the training would have made no difference to his continued employment prospects. Kunzman relies on a discovery response in which Enron listed various skills Kunzman lacked, and further added that "[t]he limited knowledge Plaintiff did have in corrosion was already covered by two fully competent corrosion techs at the Ventura plant...." Enron's Response to Plaintiff's First Set Of Interrogatories, Interrogatory No. 10. Consequently, Kunzman asserts that the only reason for offering such evidence to the jury is "to prejudice him by attempting to convince the finders of fact that he lacked initiative and didn't make any effort to 'save himself' from termination." Plaintiff's Brief, p. 9.

Enron argues that, far from showing that corrosion training would not have made any difference, the interrogatory response has a completely different spin: Enron asserts, "It would appear that Plaintiff's failure to complete his training package would be extremely relevant to the company's decision not to consider him competitive with either of the two fully competent corrosion technicians." Defendants' Brief In Support Of Their Resistance To Plaintiff's Motion In Limine, p. 5. Enron further points out that the interrogatory in question asked about reasons Kunzman was declared "at risk," while additional factors were listed in the following interrogatory as relevant to the decision to *terminate* Kunzman. That further interrogatory response states that the "primary criteria" for determining "who would be selected for the self-directed work teams was previous performance of the employees and skills needed by the teams in the future organization." Enron's Response to Plaintiff's First Set Of Interrogatories, Interrogatory No. 11. Enron contends that lack of initiative is clearly relevant to performance and value to a self-directed work team.

The parties invite the court to decide the issue of the admissibility of the corrosion training under the balancing test of *Fed. R.Evid.* 403, and the court agrees that the rule provides the appropriate standards for admissibility of this evidence. The court finds that the evidence concerning Kunzman's failure to complete corrosion training is probative of whether his skills made him competitive with other employees not terminated, and is also probative of whether he had displayed initiative that would be useful under the new "self-directed work teams" staffing of the Ventura plant. *Fed.R.Evid.* 403 (one side of the balance is probative value of the evidence); *Darden,* 70 F.3d at 1538 (starting point in Rule 403 balancing is probative value of the evidence). What weight to give such evidence is for a jury to decide. Nor can the court conclude that there is sufficient prejudice to Kunzman in providing the jury with evidence of Kunzman's skills and efforts, or lack thereof, to improve them, or sufficient confusion of issues or potential for misleading the jury, to outweigh the probative value of this evidence. *Id.* (the court must balance against probative value, "the danger of unfair prejudice, confusion of the issues, or misleading the jury...."); *Rabins,* 63 F.3d at 726 (Rule 403 requires balancing of probative value against these factors). Therefore, this second portion of Kunzman's motion in limine is also **denied.**

The court turns next to the issues raised by Enron's motion in limine.

### B. Enron's Motion In Limine

### 1. Evidence of a "pattern" of discrimination

Enron first moves in limine to preclude "[a]ny reference to a 'pattern' of laying off 'older, more senior, more highly paid employees.'" Defendants' Motion In Limine, p. 1. Enron asserts that there is no evidence of any such "pattern," and that Kunzman was, in any event, among the less senior employees at Ventura, and his salary was precisely at the median. This issue is essentially uncontested, because Kunzman states that he "does not intend to make any references at trial that Defendants have engaged in a 'pattern or practice' of discriminating against older employees," because this is not a disparate treatment "pattern or practice" case, but a disparate treatment case founded on "excessive subjectivity," in

# 863

which he asserts that Enron's decision to terminate him was illegally motivated by his age. Kunzman asserts that the fighting issue is the admissibility of co-employee testimony concerning Enron's treatment of them as establishing Enron's discriminatory motivation in terminating him. .

Hence, that portion of Enron's motion in limine seeking to preclude references to a "pattern" of laying off "older, more senior, more highly paid employees" is **granted.**

### 2. Co-employee testimony of their treatment by Enron

■ Enron next contends that Kunzman should be precluded from offering any suggestion that any other employee was a victim of age discrimination, because such evidence is not generally admissible, and because it would be unduly prejudicial to Enron. Enron describes this kind of evidence as supporting an improper "where there's smoke, there's fire" argument, and thus is violative of *Fed.R.Evid.* 402, because it can be used to suggest that Enron should be found liable whether or not Enron discriminated against Kunzman. Enron also contends that such evidence is "me too" evidence, and thus is violative of *Fed.R.Evid.* 404(b), because it suggests that if Enron discriminated against other people, it must have discriminated against Kunzman as well.

Although the court does not entirely discount the concerns Enron raises, the court finds that the admissibility of the evidence in question, at least as a general matter, is clear under established precedent of our own and other circuit courts of appeals. In *Phillip v. ANR Freight Sys., Inc.,* 945 F.2d 1054 (8th Cir.1991), *cert. denied,* 506 U.S. 825, 113 S.Ct. 81, 121 L.Ed.2d 45 (1992), the Eighth Circuit Court of Appeals confronted the question of the admissibility of evidence of other age discrimination lawsuits against an employer:

> The district court found that Phillip had failed to show that the cases were sufficiently similar to his own case and therefore the evidence was excluded on the grounds that it was irrelevant and unduly prejudicial. In light of our recent decision in *Hawkins v. Hennepin Technical Center,*

900 F.2d 153, 154 (8th Cir.), *cert. denied,* [498] U.S. [854], 111 S.Ct. 150, 112 L.Ed.2d 116 (1990), we must disagree with the district court's exclusion of this important evidence.

> In *Hawkins,* this court reversed and remanded an employee's gender discrimination and retaliatory discharge suit against her employer because the district court excluded, on relevancy grounds, evidence of alleged acts of sexual harassment committed against the plaintiff and other employees. We held that "the evidentiary exclusions were erroneous and deprived [plaintiff] of a full opportunity to present her case to the jury." *Id.* at 154. We explained that "[b]ecause an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." *Id.* at 155–56.

> In an earlier case, *Estes v. Dick Smith Ford, Inc.,* 856 F.2d 1097 (8th Cir.1988), we similarly reversed and remanded a suit by an employee alleging age and race discrimination where the district court excluded, on relevancy grounds, "evidence which tended to show a climate of race and age bias at [defendant's company]." *Id.* at 1102. We noted that an employer's background of discrimination is indeed relevant to proving a particular instance of discrimination. *Id.* at 1103.

> We find the reasoning of these two cases to be compelling in our resolution of the instant case. Here, as in *[Hawkins]* and *Estes,* the admission of such "background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." *Estes, supra,* 856 F.2d at 1103. Accordingly, we reverse the decision of the district court to exclude this evidence and remand the case for a new trial.

*Phillip,* 945 F.2d at 1056. More recent decisions demonstrate the continued viability of the proposition that evidence showing an employer has discriminated against other employees is generally admissible in the trial of

the discrimination claim of a particular employee. *See, e.g., Parrish v. Immanuel Med. Ctr.,* 92 F.3d 727, 733 (8th Cir.1996) ("In an employment discrimination case, where the plaintiff faces the difficult task of establishing an employer's motive, such evidence [that a similarly situated employee was also the subject of age discrimination] provides valuable circumstantial proof of an atmosphere of age bias and an employer's unlawful intent," citing *Hawkins,* 900 F.2d at 155); *Duckworth v. Ford,* 83 F.3d 999, 1001 (8th Cir.1996) (the employer claimed that the district court erred by admitting into evidence information about the judgment in another case against the employer as evidence of other wrongs or acts under *Fed.R.Evid.* 404(b), because the two cases were not factually similar and the evidence improperly suggested that the employer was someone who had a propensity to retaliate, and because the danger of unfair prejudice outweighed any probative value of the evidence; however, the appellate court found that "[e]vidence that [the employer] had retaliated against someone else at about the same time and under similar circumstances is evidence from which the jury could reasonably infer that [the employer] had a similar motive or intent to retaliate against [the plaintiff]," citing *Estes,* 856 F.2d at 1103); *accord Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1086 (3d Cir.1996) (citing, *inter alia, Estes* for the proposition that "[e]vidence of discrimination against other employees or of a hostile work environment is relevant to" whether the employer's asserted non-discriminatory reasons are in fact pretextual); *Burks v. Oklahoma Pub. Co.,* 81 F.3d 975, 981 (10th Cir.1996) (" 'As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent,' " quoting *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir. 1990)), *pet. for cert. filed,* 65 U.S.L.W. 3166 (Aug. 19, 1996).

Although such evidence should not be subject to "blanket evidentiary exclusions," *Callanan v. Runyun,* 75 F.3d 1293, 1298 (8th Cir.1996), the Eighth Circuit Court of Appeals has also indicated that it cannot be subject to "blanket" admissibility either. Thus, in *Callanan,* after recognizing the po-

tential probative value of such evidence, citing *Estes* and *Hawkins,* the court cautioned, " 'The evidence, however, must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts.' " *Callanan,* 75 F.3d at 1298 (quoting *Bradford v. Norfolk S. Corp.,* 54 F.3d 1412, 1419 (8th Cir.1995)). The court therefore upheld the district court's *exclusion* of the evidence of other acts of discrimination proffered in that case, on the following grounds:

> To begin with, the excluded testimony in this case, unlike the statistical evidence and specific factual allegations involved in our earlier decisions, *see, e.g., Estes,* 856 F.2d at 1102–04, consisted largely of generalized, subjective assertions of a perceived bias in operations at the [employer's] facility. Moreover, to the extent that the testimony did identify discrete acts of discrimination, the witnesses did not complain that Callanan's own supervisors had engaged in any behavior that we could correctly characterize as improper. *Cf. id.* at 1104 (mentioning that evidence of an employer's past discriminatory acts may not be probative where the employees involved in the improper activity were unconnected with the employees who discriminated against the complainant). Lastly, and perhaps most importantly, the evidentiary ruling in this case was not the type of blanket pretrial exclusion that we have in the past viewed with such skepticism. *See id.* at 1103 (stating that blanket pretrial exclusions are examined with "particular care"). Instead, in what must only be viewed as an extraordinary display of patience, the district judge in this case allowed Callanan to present her offer of proof in testimonial form and withheld a final ruling on the evidence until after the trial was completed. Under these circumstances, we think that the district court was in a unique position to adjudge the relevance and probative value of the testimony. As such, we cannot say that the district court abused its discretion in excluding the evidence proffered by Callanan.

*Callanan,* 75 F.3d at 1298; *see also Duckworth,* 83 F.3d at 1001 (the district court properly admitted "[e]vidence that [the employer] had retaliated against someone else at about the same time and under similar circumstances" because such evidence is of the kind "from which the jury could reasonably infer that [the employer] had a similar motive or intent to retaliate against [the plaintiff]," citing *Estes,* 856 F.2d at 1103); *Bradford v. Norfolk S. Corp.,* 54 F.3d 1412, 1419 (8th Cir.1995) ("Evidence of other employer actions is admissible when it supports an inference of discrimination," citing *Phillip,* and *Hawkins,* but "the evidence . . . must assist in the development of a reasonable inference of discrimination within the context of each case's respective facts," and evidence that did not admit such an inference was properly excluded.); *Kypke v. Burlington N.R. Co.,* 928 F.2d 285, 287 (8th Cir.1991) (circumstantial evidence that demonstrated only an age differential did not generate an inference of age discrimination).

Enron here seeks a "blanket" exclusion, which the court cannot give. *Callanan,* 75 F.3d at 1298. Indeed, such a blanket exclusion would be contrary to the general rule on admissibility of discriminatory treatment of Kunzman's co-employees. *Id.; Phillip,* 945 F.2d at 1056; *Hawkins,* 900 F.2d at 155–56; *Estes,* 856 F.2d at 1103. However, before such evidence is introduced, Kunzman must demonstrate, by offer of proof, that it meets the criteria of admissibility stated in *Callanan* and other decisions, which boil down to whether or not the evidence will assist in the development of a reasonable inference of discrimination within the context of this case's respective facts. *Callanan,* 75 F.3d at 1298; *Bradford,* 54 F.3d at 1419. Whether or not this court has the "extraordinary" patience to listen to lengthy offers of proof in testimonial form, *Callanan,* 75 F.3d at 1298, this court is certain that it would be unfair to the jurors to exclude them from the proceedings for lengthy periods of time while such offers of proof are made. Therefore, the court will accept offers of proof made in the form of affidavits submitted to the court before each day's proceedings or during recesses, or in the form of brief, and direct, testimonial offers of proof timed to coincide with recesses for the jury.

That portion of Enron's motion in limine seeking to exclude evidence suggesting that any other employee was a victim of age discrimination is **denied** to the extent that it seeks a blanket exclusion, without prejudice to reassertion of the motion to exclude specific testimony, but **granted** to the limited extent that Kunzman must make an offer of proof of admissibility prior to presenting such evidence. Such an offer of proof must demonstrate, briefly and directly, that the evidence creates a reasonable inference of discrimination within the context of this case's respective facts.

### 3. The angry remark of Mr. McGillivray

Enron next seeks to preclude any reference to a remark made by Mr. McGillivray that "Change [a performance evaluation] and I'll fry [Kunzman's] ass anyway." Enron asserts the statement is (1) double hearsay, (2) prejudicial, and (3) not probative of discrimination on the basis of age, because it suggests only "that Mr. McGillivray was not a fan of the Plaintiff's." Defendants' Motion In Limine, p. 3. Enron asserts the evidence is properly excluded under *Fed.R.Evid.* 401 and 402. Kunzman, however, asserts that the remark is "a direct admission of a party opponent," because McGillivray was a top-level supervisor at the Ventura facility and was acting on behalf of his employer, such that *respondeat superior* binds Enron to the statement. Kunzman asserts that the statement is probative, because McGillivray was the ultimate decision-maker in Kunzman's termination. Although he admits that the remark in question does not specifically refer to age, Kunzman contends it clearly exhibits McGillivray's animus towards Kunzman, which, combined with his dislike of older employees, prompted him to fire Kunzman.

In a prior published ruling in this case entered just over a year ago, on September 13, 1995, *Kunzman v. Enron Corp.,* 902 F.Supp. 882 (N.D.Iowa 1995), the court, among other things, considered the "stray remarks" doctrine as it pertained to other remarks of Mr. McGillivray. *Kunzman,* 902 F.Supp. at 899–901. The court noted that

whether a particular remark raises an inference of age discrimination, or is simply a "stray remark," depends upon the relationship between the remarks and the decisional process, the age-based substance of the statements, the specificity of the statements both with regard to the actual employment decision at issue such as hiring, promotion, or termination, as well as the relationship between the remark and the plaintiff's situation, and remoteness in time to the personnel decision. *Id.* at 899.

■ Here, the remark in question, although uttered by a decision-maker, does not have any age-based substance. Thus, it raises no direct inference of age discrimination. However, it quite obviously suggests animus towards Kunzman, and therefore is probative of whether Enron's asserted legitimate reasons for terminating Kunzman are pretextual. Applying the "stray remarks" inquiry to the question of an inference of pretext, rather than to discriminatory intent, the remark suggests a ground for an employment decision involving Kunzman quite different from the reason Enron has offered, the remark does relate to the actual employment decision, to the extent it suggests McGillivray was looking for an opportunity to fire Kunzman, the remark is made by the ultimate decision-maker, and it is not so remote from the decisions to notify Kunzman that he was "at risk" or to terminate him as to suggest the animus it indicates had completely abated. *Cf. Kunzman,* 902 F.Supp. at 899 (considering similar factors as to whether a remark raised an inference of discriminatory intent). Although animus, and even pretext, alone do not suffice to prove Kunzman's age-discrimination case, both are probative of a discrimination claim. The court recognizes that it is not a violation of the ADEA for an employer or one of its supervisory personnel to dislike an employee, even an older employee; it is only a violation of the ADEA if the employer takes an adverse employment action for an age-based reason. Nonetheless, the court agrees with Kunzman that a strong

showing of animus directed at the plaintiff, which may show pretext, if coupled with some additional showing of age-based discrimination, *see, e.g., Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328 (8th Cir. 1996) (discussing in detail when some additional showing beyond pretext is required to prove discrimination); *Krenik v. County of Le Sueur,* 47 F.3d 953, 958 (8th Cir.1995) (at the third stage of a *McDonnell Douglas* analysis, some additional showing of intentional discrimination in addition to pretext is required to demonstrate discrimination), might suffice to persuade a jury that age discrimination caused the plaintiff's discharge.

■ Thus, the court concludes that the "fry his ass" comment is probative of issues in this case, and would generally be admissible under *Fed.R.Evid.* 401 and 402. The next question is whether the evidence is unfairly prejudicial under *Fed.R.Evid.* 403.[8] The fact that the evidence may be harmful to Enron's case does not make it *unfairly* prejudicial. The court finds that any potential prejudice or confusion on the part of the jury that might arise as to whether mere animus would suffice to prove Kunzman's case could be removed by an instruction to the effect that the law prohibits only age-based discrimination in employment, but does not prohibit mere dislike of an employee. *See, e.g., O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1201 (8th Cir.1990) (the prejudicial effect of evidence may be negated by a proper instruction on what is at issue in the trial). The court will therefore consider such an instruction, if it is requested.

The "fry his ass" remark of Mr. McGillivray is probative of issues in the case, and is therefore admissible under *Fed.R.Evid.* 401 or 402. Furthermore, it need not be excluded under *Fed.R.Evid.* 403, because any danger of prejudice or confusion of the issues can be cured by a proper instruction on what must be proved to establish age-based discrimination. That portion of Enron's motion in limine seeking to exclude any reference to

**8.** Because of the lack of clarity with which the parties have addressed Enron's double hearsay objection to this evidence, it is not apparent how or through whom the "fry his ass" comment may be presented to the jury. The extent to which the

remark may constitute hearsay or double hearsay may depend upon the manner in which the evidence of the remark is offered at trial. Thus, that objection will have to await disposition at trial.

McGillivray's "fry his ass" comment is therefore **denied**.

### 4. References to Enron's size and wealth

The final contested issue in Enron's motion in limine is its assertion that any reference to its size or wealth should be excluded. Enron's laconic argument is that "[s]uch evidence is not relevant and [is] prejudicial, and is properly excluded under FED. R.EVID. 401 and/or 403." Defendants' Motion In Limine, p. 3. In response, Kunzman's counsel states, first, that he "has no intention of parading net worth of the Defendant corporation before the jury," and the court will take him at his word. However, Kunzman contends that references to size and wealth cannot logically or realistically be excluded from the case, because of Enron's asserted legitimate, non-discriminatory reasons for discharging Kunzman, which are in part based on a need to make adjustments in light of economic difficulties and a need to modernize. Kunzman points out that some of the decisions pertinent to the RIF at the Ventura facility were made by decision-makers in distant cities, and those decisions were at least partly prompted by a desire to cut overhead and excess workforce nationwide.

In light of these issues, and in light of Kunzman's counsel's assurances that he will not parade Enron's net worth in front of the jury, the court finds that Enron's size and wealth are relevant to and probative of issues in this case, *Fed.R.Evid.* 401, 402, and that the potential for unfair prejudice is limited. *Fed.R.Evid.* 403. Thus, that portion of Enron's motion in limine seeking to exclude references to Enron's size and wealth is **denied**.

### III. CONCLUSION

The court concludes that Kunzman's motion in limine should be **denied** in its entirety. That portion of Kunzman's motion in limine seeking to preclude testimony of former co-employees concerning his attitude and performance is denied, because there is no "surprise in fact" as to the identity of the witnesses or the content of their testimony, and no showing of bad faith failure to disclose the witnesses in response to discovery requests for the identity of "witnesses." However, as stated herein, Enron shall bear the costs of any depositions Kunzman may now wish to take of Mr. Quinn or Mr. Roseland. That portion of Kunzman's motion in limine seeking to exclude evidence that he failed to complete corrosion technician training is also denied, because such evidence is probative of issues in this case and is not unfairly prejudicial.

Enron's motion in limine is **granted in part** and **denied in part**. First, that portion of Enron's motion in limine seeking to preclude references to a "pattern" of laying off "older, more senior, more highly paid employees" is granted as uncontested. Turning to the next portion of Enron's motion, however, under governing law, this court cannot make a "blanket" exclusion of evidence suggesting that any other employee was a victim of age discrimination. Therefore, that portion of the motion is denied to the extent that it seeks a blanket exclusion, without prejudice to reassertion of the motion to exclude specific testimony, but granted to the limited extent that Kunzman must make an offer of proof of admissibility prior to presenting such evidence. Next, that portion of Enron's motion in limine seeking to exclude any reference to McGillivray's "fry his ass" comment is denied. The comment is probative of pretext, which is an issue relevant to this age-discrimination case, and any danger of prejudice or confusion of what issue is properly before the jury in this case can be cured by proper instructions. Finally, that portion of Enron's motion in limine seeking to exclude references to Enron's size and wealth is denied, because counsel for Kunzman has undertaken not to parade Enron's net worth before the jury, size and wealth are otherwise probative of issues involved in this case, and that probative value is not outweighed by prejudice.

**IT IS SO ORDERED.**