

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2003

# Whittaker v. Fayette Cty

Precedential or Non-Precedential: Non-Precedential

Docket 02-2434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Whittaker v. Fayette Cty" (2003). *2003 Decisions*. Paper 659.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/659

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 02-2434/2457

_____

DONALD WHITTAKER

v.

FAYETTE COUNTY,
SHERIFF GARY BROWNFIELD, SR., individually and in his official capacity,
Appellants in 02-2434

_____

DONALD WHITTAKER,
Appellant in 02-2457

v.

FAYETTE COUNTY,
SHERIFF GARY BROWNFIELD, SR., individually and in his official capacity

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Court Judge: The Honorable William L. Standish
(D.C. Civil No. 00-cv-01096)

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 6, 2003

Before: ROTH, BARRY, and FUENTES, Circuit Judges.

(Opinion Filed: April 9, 2003)
_____

FUENTES, Circuit Judge:

Donald Whittaker brought an action against Fayette County and Sheriff Gary Brownfield, Sr. (collectively, "Defendants") under 42 U.S.C. § 1983. Whittaker claims that his First and Fourteenth Amendment rights were violated by Brownfield's politically-motivated decision to terminate his employment. Following trial, the jury returned a verdict in favor of Whittaker and awarded compensatory damages, but not punitive damages. Defendants and Whittaker filed post-trial motions seeking judgment as a matter of law and/or a new trial based on asserted errors, which the District Court denied. In their appeal from the District Court's denial of their post-trial motion, Defendants raise two issues: 1) whether the District Court erred in admitting the testimony of another former employee and evidence concerning his termination from the Sheriff's Department; and 2) whether the record was sufficient to support the jury verdict. In his appeal from the District Court's denial of his post-trial motion, Whittaker raises an issue concerning an instruction the District Court gave with respect to punitive damages. We find that none of the arguments raised by Defendants and Whittaker have any merit. Therefore, we will affirm the District Court's denial of their post-trial motions.

## I. BACKGROUND

The evidence presented at trial established that the incumbent Sheriff in Fayette County, Norma Santore, announced in 1998 that she would not seek reelection in 1999. (App. p. 91)

Five candidates ran for the office in the Democratic primary, including Mark Santore (the former Sheriff's son) and Gary Brownfield, Sr. Id. at 91-92. Brownfield won the primary and ran unopposed in the general election. Id.

Shortly after Brownfield won the primary, John Mongell asked him if he would "clean house" after he took office. Id. at 148. Brownfield told Mongell that he would fire Whittaker, a Deputy Sheriff, because he had observed Whittaker engaging in poor work behavior. Id. at 148-149. In a later conversation with Mongell, Brownfield again stated that he would fire Whittaker because of his poor work habits, and added that he would also fire Mark Santore, the incumbent Chief Deputy, because Santore's mother (the former Sheriff) did not back Brownfield in the election. Id. at 150-151.

On January 3, 2000, Brownfield took office and fired Santore and Whittaker. Id. at 33, 35, 93, 144. Brownfield told Santore that he was being terminated because his "mother chose this path for [him], that if she would have supported [Brownfield] instead of [Santore], [Brownfield] would have kept [Santore] in the office." Id. at 144. Brownfield told Whittaker that he wanted "to surround [himself] with people [he] felt comfortable with," and that he had made "political promises." Id. at 36. Brownfield said he "made some promises, campaign promises to people, and he was going to keep them." Id. at 76-77. Upon questioning by Whittaker, Brownfield admitted that he was not firing him for the reasons he stated to Mongell. Id. at 35.

Brownfield replaced Santore with a political supporter, Larry Goldberg. Id. at 96. Goldberg had campaigned for Brownfield and had been promised the position of Chief Deputy upon Brownfield's election. Id. at 97. When Whittaker asked who Brownfield would hire to

3

replace him, Brownfield said, "I don't know . . . I have, like five people that I have talked to. There are four or five people I'm looking at." Id. at 80. Brownfield told Whittaker that "you can be assured that if anyone asks me, I'll tell them it [the firing] was for political reasons." Id. at 82. Brownfield later hired Anthony Bartock and Lud Muccioli and four other individuals for positions in the Sheriff's Department, all of whom were campaign supporters of Brownfield. Id. at 104-105, 136-37. Brownfield testified that none of these new hires filled Whittaker's position because that position had been eliminated. (App. Vol. II, pp. 300-302, 409)

Prior to trial, Defendants filed a motion in limine seeking the exclusion of the testimony of Mark Santore. Defendants argued that Santore's testimony would be irrelevant and highly prejudicial. The District Court denied the motion and Santore was permitted to testify. At the conclusion of the trial, the jury returned a verdict in favor of Whittaker and awarded compensatory damages. Defendants moved for judgment as a matter of law at the close of Whittaker's case-in-chief and again following the conclusion of the evidence. On each occasion, the District Court denied the motion.

The District Court then reconvened the jury to consider Whittaker's claim for punitive damages. The District Court instructed the jury, in part, that punitive damages could be awarded if "you find that the conduct of defendant Brownfield was shown to be motivated by evil motive or intent, or if it involved reckless or callous indifference to the federally protected rights of the plaintiffs." During their deliberations, the jury sent out the following question: "Please define: reckless and callous." The District Court issued the following instruction, over Whittaker's objection: "Answer: The terms reckless and callous focus on the

4

state of mind of a defendant. They refer to a defendant's knowledge that he may be acting in violation of federal law, the conduct of the defendant despite that knowledge and the conscious disregard or indifference of the defendant about the consequences of such conduct." (App., p. 178) The jury awarded compensatory damages in the sum of $139,369, but did not award punitive damages.

Defendants filed a timely post-trial motion renewing their request for judgment as a matter of law, and alternatively, requesting a new trial. The District Court denied their motion. Whittaker filed a motion for a new trial on the issue of punitive damages, which the District Court also denied. Defendants and Whittaker then filed timely notices of appeal to this Court.

## II. ANALYSIS

Because Whittaker brought his claim under 42 U.S.C. § 1983, the District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3),(4). We have appellate jurisdiction over the final judgments of the District Court pursuant to 28 U.S.C. § 1291.

### A. Admissibility of Santore Testimony

We review a district court's evidentiary rulings for abuse of discretion. Johnson v. Elk Lake School District, 283 F.3d 138, 156 (3d Cir. 2002) (citations omitted). "Where, however, the district court fails to explain its grounds for denying [an evidentiary objection] and its reasons for doing so are not otherwise apparent from the record, there is no way to review its discretion. . . . In those circumstances, we need not defer to the district court's ruling, and we may undertake to examine the record and perform the required balancing ourselves." Becker v. Arco Chemical Co., 207 F.3d 176, 181 (3d Cir. 2000) (citations omitted).

5

Defendants made a motion in limine to exclude the testimony of Mark Santore on the grounds that the evidence would be irrelevant and highly prejudicial. Following oral argument, the District Court denied the motion without explanation and ruled that it would allow Santore's testimony. (App. Vol. II, p. 113) Because the District Court did not explain its reasoning in denying Defendants' motion, we will examine the record and perform our own analysis.

Defendants argue that Santore's testimony should have been excluded because it was irrelevant and highly prejudicial. Defendants assert that they are entitled to judgment as a matter of law or a new trial because the admission of Santore's testimony "improperly and irreparably tainted the entire case since the jury was asked by plaintiff to conclude and in fact concluded that Mr. Whittaker was terminated for political reasons because Santore was." (Def.'s Brief, p. 18)

The first question is whether Santore's testimony was relevant. Federal Rule of Evidence 401 defines relevant evidence as that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, Whittaker testified that Brownfield fired him for political reasons, while Brownfield testified that he fired Whittaker because of his poor work performance and because he wanted to reorganize the Sheriff's Department. The conflicting testimony raised the consequential factual issue of Brownfield's intent in firing Whittaker. Santore's testimony was offered by Whittaker to prove that it was more probable than not that Brownfield fired him for political reasons. Accordingly, Santore's testimony fits within the Rule 401 definition of relevance.

6

Next, we must determine whether the evidence was otherwise admissible. Santore's testimony pertained to an act by Brownfield other than the firing of Whittaker. "Other act" evidence falls under the rubric of Federal Rule of Evidence 404(b), which provides that: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." As we explained above, Santore's testimony that Brownfield fired him for political reasons was offered to prove that Brownfield was firing Sheriff's Department employees for political reasons. In other words, the "other act" evidence was offered to prove Brownfield's motive or intent, and to rebut his asserted non-discriminatory reasons for firing Whittaker. See Hurley v. Atlantic City Police Dep't., 174 F.3d 95, 110 (3d Cir. 1999) (holding, in the context of a Title VII action, that "evidence of harassment of other women and widespread sexism is also probative of 'whether one of the principal nondiscriminatory reasons asserted by [an employer] for its actions was in fact a pretext for ... discrimination.'"), cert. denied, 528 U.S. 1074 (2000); Burks v. Oklahoma Pub. Co., 81 F.3d 975, 981 (10th Cir. 1996) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent."), cert. denied, 519 U.S. 931 (1996).

The proximity in time and similarity of circumstances between Brownfield's firing of Whittaker and Santore militate in favor of admission of the Santore testimony to prove Brownfield's motive or intent. Whittaker and Santore were both Deputies in the Sheriff's Department. Brownfield fired Whittaker and Santore on the same day. He offered "politics"

7

as a reason for both firings. Both men were replaced by Brownfield's campaign supporters. These similarities warrant the admission of the "other act" evidence. See Duckworth v. Ford, 83 F.3d 999, 1001-1002 (8th Cir. 1996) (holding that, in civil rights action alleging defendant had violated plaintiff's first amendment rights by spreading rumors in retaliation for supporting another candidate, court did not err in admitting evidence about jury verdict in favor of a different plaintiff against same defendant because of factual similarity between the cases).

The last remaining question with respect to the admissibility of the evidence is whether the probative value of the Santore testimony is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . ." Fed. R. Evid. 403. We have already discussed the probative value of the Santore testimony. Defendants contend that the possible prejudice from this evidence is that it leads to an impermissible inference that Whittaker was terminated for the same reasons as Santore. Defendants also express concern that Santore's testimony "likely confused the issues and misled the jury." (Def.'s Brief, p. 23) Defendants' arguments with respect to prejudice and confusion, however, amount to an assertion that Santore's testimony tends to prove Whittaker's case. After all, the reason Whittaker sought to admit Santore's testimony was to prove that Brownfield intended to "clean house" after his election to the office of Sheriff, and that included terminating employees who did not support his candidacy. The fact that relevant evidence is damaging to Defendants' case does not lead to the conclusion that it is unfairly prejudicial. Accordingly, we find that the Santore testimony need not have been excluded under Federal Rule of Evidence 403.

## B. Sufficiency of the Evidence

"In reviewing a district court's ruling on a post-trial motion for judgment as a matter of law, this Court applies the same standard as the district court." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 (3d Cir. 1995). "We review the record in the light most favorable to the verdict winner, and affirm the denial unless the record is 'critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief.'" Id.

We have reviewed the record and find that the District Court correctly denied Defendants' motion for a new trial on the ground of insufficient evidence. There was evidence that Brownfield terminated the employees who did not support him and hired campaign supporters to fill the vacant positions. There was evidence that Brownfield fired Whittaker because he did not support Brownfield's campaign for Sheriff. Perhaps the most powerful evidence on this point was Brownfield's statement to Whittaker: "you can be assured that if anyone asks me, I'll tell them it [the firing] was for political reasons." (App., p. 219) Brownfield does not deny that he made that statement. The jury could reasonably infer from the evidence that Brownfield was motivated to fire Whittaker because Whittaker did not support his candidacy for Sheriff.

## C. Punitive Damages Instruction

We review a district court's jury instruction de novo when it is alleged that the instruction misstated the law. Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513 (3d Cir. 1997), cert. denied, 523 U.S. 1074 (1998).[1]

---

[1]Defendants contend that the standard of review should be plain error because Whittaker did not submit a proposed instruction that was an accurate statement of the law. Defendants do not dispute, however, that Whittaker objected to the District Court's proposed

Whittaker asserts that the District Court erred in instructing the jury as to the definition of "reckless and callous." Whittaker argues that the District Court's instruction misled the jury to believe that "punitive damages could only be awarded if the defendant acted with knowledge that he was violating a civil right, or acted with such knowledge and indifference." (Whittaker's Brief, p. 10) Whittaker also maintains that the evidence supported an award of punitive damages, and but for this erroneous instruction, the jury would have awarded them.

The District Court instructed the jury, in part, that punitive damages could be awarded if "you find that the conduct of defendant Brownfield was shown to be motivated by evil motive or intent, or if it involved reckless or callous indifference to the federally protected rights of the plaintiffs." Both parties agree that this instruction was a correct statement of the law. The problem arose when the jury submitted a request for the District Court to define the terms "reckless and callous." Over Whittaker's objection, the District Court gave the following instruction: "The terms reckless and callous focus on the state of mind of a defendant. They refer to a defendant's knowledge that he may be acting in violation of federal law, the conduct of the defendant despite that knowledge and the conscious disregard or indifference of the defendant about the consequences of such conduct."

The standard for punitive damages in a federal civil rights action has been established by the Supreme Court: A jury may "assess punitive damages in [a civil rights action] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

---

instruction and that Whittaker submitted his own proposed instruction. These actions were sufficient to preserve this issue for review. See Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 350 n. 2 (3d Cir. 1999) (finding jury instruction issue preserved by counsel's objection to a proposed instruction during charge conference).

reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see also Alexander v. Riga, 208 F.3d 419, 430-431 (3d Cir. 2000). This Court has explained that the term "reckless indifference" refers to the defendant's knowledge that he "may be acting in violation of federal law." Riga, 208 F.3d at 431 (citing Kolstad v. American Dental Ass'n, 527 U.S. 526, 537 (1999)); see also Miller v. Apartments & Homes, 646 F.2d 101, 111 (3d Cir. 1981) (punitive damages appropriate where defendant acts with reckless disregard as to whether he is violating a federally protected right, or consciously and deliberately disregards consequences of actions). Relying on Kolstad, this Court found that the term "reckless" focuses on the defendant's state of mind. Riga, 208 F.3d at 431. In fact, the Supreme Court observed in Kolstad that the mere existence of a civil rights violation is not a guarantee of eligibility for punitive damages because a defendant might not be aware of the federal law he violated or he might have believed that the discrimination was permissible. 527 U.S. at 536-537.

We fail to see how the District Court's definition of "reckless and callous" deviates in any meaningful way from the definitions provided by the Supreme Court and this Court. Because the District Court's instruction was correct, we will affirm the District Court's denial of Whittaker's motion for a new trial on the issue of punitive damages.

## III. CONCLUSION

For the foregoing reasons, we affirm the District Court's denial of Defendants' and Whittaker's post-trial motions.

11

/s/ Julio M. Fuentes
Circuit Judge