Douglas L. DAUGHERTY, Appellant,

v.

The CITY OF MARYLAND HEIGHTS, Respondent.

No. SC 88012.

Supreme Court of Missouri, En Banc.

Aug. 7, 2007.

Rehearing Denied Sept. 25, 2007.

Greg C. Kloeppel, Kevin J. Dolley, St. Louis, for appellant.

Patricia M. McFall, James N. Foster, Jr., William B. Jones, Amy R. Brown, St. Louis, for respondent.

Ferne P. Wolf, D. Eric Sowers, Kathryn Render, St. Louis, for amicus curiae, St. Louis Chapter of the National Employment Lawyers Association.

MARY R. RUSSELL, Judge.

Douglas Daugherty appeals after summary judgment was entered against him on his suit against the City of Maryland Heights. Daugherty sought relief under the Missouri Human Rights Act (MHRA),[1] alleging that the City wrongfully terminated his employment as a police captain on the basis of age and disability. This Court granted transfer after opinion by the Court of Appeals, Eastern District. Jurisdiction is vested in this Court pursuant to Mo. Const. art. V, sec. 10.

This Court reverses the trial court's judgment. Daugherty presented sufficient evidence to survive summary judgment on both his age and disability discrimination claims and is entitled to have a trier-of-fact determine if he suffered employment discrimination. The cause is remanded.

### Background

Daugherty was a 59–year–old police captain when he was terminated in 2002. The parties disagree about the circumstances of his termination.

---

1. The MHRA includes sections 213.010 to 213.137, RSMo 2000, and section 213.041, RSMo Supp.2006. All further statutory references are to RSMo 2000, unless otherwise indicated.

Daugherty began employment with the City's police department in 1986, following his work for other area police departments. While on duty supervising an accident scene in 1986, he was struck by a vehicle operated by a drunk driver. His resulting injuries kept him off work for over a year, but he then returned to active duty. He was promoted to police captain in 1999. In 2000, he missed months of work after having back surgery for degenerative spine disease related to his 1986 injury. His recovery and on-going medical issues subsequent to this surgery increased his use of available sick leave. His 2002 performance evaluation reflected his increased use of sick leave and two violations of the police department's leave policies.

The City contends that Daugherty's frequent absences demonstrated that his physical condition made him unable to perform the duties of a front-line officer. It argues that Daugherty's physical condition began to deteriorate in 1999, which led to increasing absenteeism because of his narcotic prescription medications. The City maintains that all police officers, even police captains, must be able to perform front-line officer duties. It asserts that it required Daugherty to submit to a "fitness for duty" examination in 2002 in order to determine if he was physically able to perform his duties as a police captain. The City's doctor determined that Daugherty was unable to perform the duties of a front-line officer, but he was able to perform his supervisory duties as a police captain.

Daugherty was informed that he was terminated because the examination revealed that he could not perform certain physical tasks required of front-line officers, such as suspect capture. Daugherty disputes the City's arguments that he was incapable of performing the police captain's job, arguing that there is no evidence showing that he failed to complete the essential functions of the position. Although Daugherty admits that the City had the right to send officers for fitness for duty evaluations, he alleges that the City required him to take a "disability examination" that was not required of other similarly-situated officers. He also complains that he was encouraged to take disability retirement[2] in order to avoid termination.

After Daugherty learned of his termination, he met with his supervisor, Chief Thomas O'Connor, who is also his brother-in-law. Daugherty taped his conversation with Chief O'Connor, recording Chief O'Connor stating that the city administrator wanted to get rid of employees over the age of 55 because their salaries were costly to the City. When Daugherty told Chief O'Connor he thought this was age discrimination, Chief O'Connor agreed. The City discounts the taped statements made by Chief O'Connor regarding Daugherty's age, arguing that Chief O'Connor's subsequent deposition testimony reveals that he made the statements in an effort to appease his brother-in-law.

Daugherty believes that he was terminated on account of his age and perceived disability in violation of the MHRA. After receiving a right-to-sue letter from the Missouri Human Rights Commission, he filed suit.[3] The City moved for summary judgment on Daugherty's age and disabili-

2. The City's policies allow disabled employees to collect 66% of their base salary until age 65, which is the mandatory retirement age for police department employees.

3. The process by which MHRA cases proceed is not fully discussed in this opinion, as other cases fully explain MHRA proceedings. *See, e.g., State ex rel. Diehl v. O'Malley,* 95 S.W.3d 82, 89–90 (Mo. banc 2003).

ty discrimination claims. The trial court entered judgment for the City on both claims, finding that Daugherty failed to establish a *prima facie* case for both age and disability discrimination.

Daugherty appeals, arguing that his age and disability discrimination claims should have survived summary judgment.

## Standard of Review

■■■ Appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.* A "genuine issue" that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376. The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment. *Id.* at 376–81.

■■■ Summary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence.[4] *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir.2005); *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 486–87 (8th Cir.1998). Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant. *Lynn*, 160 F.3d at 487.

## Analysis for MHRA Claims

■■■ In deciding a case under the MHRA, appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law. *See, e.g., Midstate Oil Co., Inc. v. Mo. Comm'n on Human Rights*, 679 S.W.2d 842, 845–46 (Mo. banc 1984) (an MHRA case approving use of the burden-shifting model of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–01, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), used in federal discrimination claims); *Medley v. Valentine Radford Communications, Inc.*, 173 S.W.3d 315, 319 (Mo.App.2005) (applying federal disability caselaw in MHRA case); *West v. Conopco Corp.*, 974 S.W.2d 554, 556–57 (Mo.App.1998) (considering federal age discrimination cases in MHRA age discrimination case). Missouri's discrimi-

4. Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the employment decision. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997). Direct evidence includes evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude, if it sufficiently supports an inference that the discriminatory attitude was more likely than not a motivating factor. *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993). Statements by decision-makers, however, are not considered direct evidence if they are unrelated to the decisional process. *Id.* Direct evidence is not common in discrimination cases because employers are shrewd enough to not leave a trail of direct evidence. *See E.E.O.C. v. Liberal R–II Sch. Dist.*, 314 F.3d 920, 923 (8th Cir.2002) (discussing that there is seldom direct evidence of discrimination for this reason).

nation safeguards under the MHRA, however, are not identical to the federal standards and can offer greater discrimination protection. *See, e.g., Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 112–13 (Mo. App.2006) (discussing that MHRA & federal Title VII[5] are "coextensive, *but not identical*, acts" and MHRA is "in some ways broader than Title VII, and in other ways is more restrictive"). "If the wording in the MHRA is clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." *Id.* at 113.

■ Daugherty brought his claim under section 213.055, the section of the MHRA that prohibits employers from engaging in discriminatory employment practices, including wrongful termination. The MHRA defines "discrimination" to include "*any* unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." Section 213.010(5) (emphasis added). Nothing in this statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient.

*See McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 170 (Mo.App.2006).

Past MHRA cases have followed a pattern of analysis articulated by the federal courts.[6] But this Court's 2003 decision holding that jury trials are available under the MHRA,[7] followed by the adoption of a pattern verdict-directing instruction for MHRA employment discrimination claims—MAI 31.24—in 2005, signals an opportunity to review the analysis applied in MHRA cases. Missouri employment discrimination law in a post-MAI 31.24 environment should more closely reflect the plain language of the MHRA and the standards set forth in MAI 31.24 and rely less on analysis developed through federal caselaw.

### Application of MAI 31.24 to MHRA Employment Discrimination Claims

■ Previously, MHRA discrimination analysis has focused on determining if a challenged employment decision was "motivated" by an illegitimate purpose. *See, e.g. Midstate*, 679 S.W.2d at 845 (looking at whether the defendant employer's conduct was "motivated by an invidious purpose or whether it was based on a legitimate and rational consideration"). Citing

---

**5.** Title VII of the Civil Rights Act of 1964 (Title VII) prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. section 2000e–2.

**6.** Under federal law, there are two avenues by which employment discrimination plaintiffs survive summary judgment—either by presenting direct evidence of discrimination or, if no direct evidence is available, by using the burden-shifting model established in *McDonnell Douglas*, 411 U.S. at 800–01, 93 S.Ct. 1817. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir.2004). It is clear that the Eighth Circuit continues to use the *McDonnell Douglas* standard in employment discrimination cases where there is no direct evidence of discrimination. *See, e.g., Simpson,*

425 F.3d at 542 n. 4. However, if an employee offers direct evidence of discrimination, the standard outlined in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is applied. This standard requires the employee to produce direct evidence that age or disability "played a motivating part in [the] employment decision." *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. 1775. The burden then rests with the employer to prove by a preponderance of the evidence that it would have made the same decision even absent consideration of the illegitimate factor. *Id.*

**7.** *Diehl*, 95 S.W.3d 82.

MAI 31.24, however, Daugherty argues that his claims should have survived summary judgment because he alleged genuine issues of material fact as to whether age or disability were "contributing factors" in the City's termination decision. The application of MAI 31.24 at the summary judgment stage of MHRA employment discrimination claims is an issue of first impression for this Court.

MAI 31.24 states:

Your verdict must be for plaintiff if you believe:

First, defendant *(here insert the alleged discriminatory act, such as "failed to hire," "discharged" or other act within the scope of Section 213.055, RSMo)* plaintiff, and

Second, *(here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability)* **was a contributing factor** *in such (here, repeat alleged discriminatory act, such as "failure to hire," "discharge," etc.),* and

Third, as a direct result of such conduct, plaintiff sustained damage.

*[unless you believe plaintiff is not entitled to recover by reason of Instruction Number *(here insert number of affirmative defense instruction)* ].

MAI 31.24 (6th Ed. Supp.2007) (bolded emphasis added).

This Court finds that the "contributing factor" language used in MAI 31.24 is consistent with the plain meaning of the MHRA. Analyzing summary judgment decisions under the standards set forth in MAI 31.24 is appropriate because a plaintiff has no higher standard to survive summary judgment than is required to submit a claim to a jury.

## Summary Judgment Analysis Post–MAI 31.24

Applying the MAI 31.24 "contributing factor" standard in determining summary judgment under the MHRA results in the following analysis: Daugherty's claims for age and disability discrimination can survive summary judgment if there is a genuine issue of material fact as to whether age or disability was a "contributing factor" in the City's termination decision.

As in any summary judgment matter, this Court's review of summary judgment in the context of MHRA employment discrimination claims must determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the "genuine issue" in the case is real, not merely argumentative, imaginary, or frivolous. *See ITT,* 854 S.W.2d at 376.

## Age Discrimination Claim

■ There is no dispute in this case that Daugherty was entitled to the age discrimination protections of the MHRA.[8] Applying the "contributing factor" analysis to his age discrimination claim, the claim survives summary judgment if there is a genuine issue of material fact as to whether his age was a "contributing factor" in the City's termination decision.

The City contends that it terminated Daugherty after his fitness for duty evaluations showed that he was incapable of performing the duties of a front-line police officer. His evidence for his age discrimination, however, includes that Chief O'Conner was a decision-maker in his termination and that he tape-recorded Chief O'Connor telling him that the city administrator was trying to get rid of employees over the age of 55. The City discounts these statements as an effort by Chief

---

8. The MHRA protects persons aged 40 to 70 from age discrimination. Section 213.010(1).

O'Connor to appease Daugherty. With this evidence, however, Daugherty's age discrimination claim survives summary judgment because he has provided evidence that creates a genuine issue of material fact as to whether his age was a "contributing factor" in the City's termination decision.

The trial court erred in entering judgment in the City's favor on Daugherty's age discrimination claim, and its judgment on this claim is reversed.

### Disability Discrimination Claim

Unlike his age discrimination claim, Daugherty's disability discrimination claim involves a dispute about whether he has shown that he is entitled to the protections of the MHRA on this claim. As such, before the "contributing factor" analysis can be applied to his disability discrimination claim, this Court must determine whether his claim survives summary judgment on the issue of whether he has a disability within the protections of the MHRA.

### A. Determining Disability Protection

■ The MHRA defines "disability" as:

[A] physical or mental impairment which substantially limits one or more of a person's major life activities,[9] *being regarded as having such an impairment,* or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of

public accommodation, or occupying the dwelling in question.

Section 213.010(4) (emphasis added).

Daugherty's discrimination claim alleges that he was terminated because the City "regarded him as" disabled. As a "regarded as" MHRA plaintiff, Daugherty must prove that the City either: (1) wrongly believed that he had an impairment that substantially limited one or more major life activities or (2) wrongly believed that an actual, non-limiting impairment substantially limited one or more major life activities. 8 CSR 60–3.060(1)(E); *see also Brunko v. Mercy Hosp.,* 260 F.3d 939, 942 (8th Cir.2001).

■ Daugherty was substantially limited in performing a major life activity for purposes of the MHRA if he was "unable to perform" or "significantly restricted as to the condition, manner or duration under which" he could perform a particular major life activity. *Epps v. City of Pine Lawn,* 353 F.3d 588, 592 (8th Cir. 2003) (internal citations omitted) (disability discrimination case brought by terminated police officer under the MHRA and the Americans with Disabilities Act (ADA)). A plaintiff's " 'inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working.' "[10] *Id.* (quoting 29 C.F.R. section 1630.2(j)(3)(i)); *Breitkreutz v. Cambrex Charles City, Inc.,* 450 F.3d 780, 784 (8th Cir.2006). "A substantial limitation on the major life activity of working means that an individual must be 'significantly restricted in the ability to perform

---

9. Employment is a "major life activity" included in MHRA disability discrimination protections. 8 CSR 60–3.060(1)(C).

10. The ADA distinguishes between being regarded as an individual unqualified for a particular job because of a limiting physical impairment and being regarded as "disabled" within the meaning of the ADA. *Epps,* 353

F.3d at 592 (internal citations omitted). Disability discrimination prohibitions do not prevent employers from deciding that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job. *Id.* (internal citations omitted).

either a class of jobs or a broad range of jobs in various classes.'" *Epps*, 353 F.3d at 592 (quoting 29 C.F.R. section 1630.2(j)(3)(i)).

The City claims that Daugherty is not disabled within the protections of the MHRA simply because he was unable to perform the *particular* job of police captain. However, viewing the record in the light most favorable to Daugherty, as is required by the standard of review, Daugherty's evidence shows that the City believed he was incapable of performing an entire class of jobs—uniformed officer positions of any rank. As such, summary judgment is inappropriate on this issue, because the record shows genuine issues of material fact regarding whether the protections of the MHRA apply to Daugherty as a "regarded as" plaintiff.[11]

## B. Essential Functions of the Job

■ Although Daugherty presented sufficient evidence to defeat summary judgment on the issue of whether he was "regarded as" disabled, he must also present sufficient evidence that he was capable of performing his job as a police captain. This standard must be imposed given that the MHRA definition of "disability" includes that an MHRA-protected impairment cannot "interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question." Section 213.010(4). The MHRA protects employees from disability discrimination for a disability that is "un-related to a person's ability to perform the duties of a particular job or position" and that "does not substantially interfere with a person's ability to perform the essential functions of the employment" at issue. 8 CSR 60–3.060(1)(F).

In determining whether a particular function is "essential," courts may consider evidence concerning the following factors: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before the employer began advertising or interviewing for the position; (3) the amount of time on the job spent performing the function; (4) the consequences of not requiring the employee to perform the function; and (5) the past or current work experience of employees in similar jobs. *See* 29 C.F.R. section 1630.2(n)(3); *see also Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir. 1998). The City's personnel manual defines an "essential function" to include "a required task or assignment actually performed by a specific position that, if removed, would fundamentally change the job."

Deputy Chief of Police Major Kozuszek prepared a memorandum detailing the job description for a police captain that was used by the City's doctor who evaluated Daugherty. Major Kozuszek's description cited parts of the City's official position description, which states:

GENERAL PURPOSE

**11.** Comparatively, the 8th Circuit in *Epps* found that a terminated police officer was not entitled to "regarded as" disability protections where the city believed the officer should be given a detective job because he was incapable of performing the tasks of a patrolman. 353 F.3d at 592–93. The *Epps* court found summary judgment was properly entered against the police officer plaintiff in that case because he had failed to provide evidence that he "could not perform a broad range of work" and instead the evidence showed only that he "could no longer perform as a policeman ... based on the particular demands of a [city] patrolman." *Id.* at 593. Daugherty's case is distinguishable, however, insofar as he showed evidence that the City believed him incapable of all uniformed department jobs and thought him capable only of non-officer administrative or clerical jobs.

Performs a variety of routine and complex public safety work in the supervision of the police department. Supervises police patrol, investigation, traffic regulation, and related law enforcement activities.

. . . .

ESSENTIAL DUTIES AND RESPONSIBILITIES

Supervises police sergeant, police officers and support staff in their assigned duties.

. . . .

Oversees and assists, as needed in the response to emergency radio calls and investigates accidents, robberies, civil disturbances. . . . Takes appropriate law enforcement action.

. . . .

[C]onducts follow-up investigations of crimes committed during assigned shift, seeks out and questions victims, witnesses and suspects, develops leads and tips, searches scene of crimes for clues, analyses and evaluates evidence and arrests offenders. . . .

. . . .

PHYSICAL DEMANDS

. . . .

While performing the duties of this job, the employee is regularly required to stand; sit; talk or hear; and use hands to finger, handle, or operate objects, controls, or tools . . . . occasionally required to stand; walk; reach with hands and arms; climb or balance; stoop, kneel, crouch, or crawl; and taste or smell.

Major Kozuszek, however, also listed specifications for the position that were not taken from the City's official written job description:

The point to be made here is the fact that commanders may find themselves required to participate in the actual physical process of conducting an investigation and affecting an arrest. This process might entail chasing a suspect over fences, running up stairs, climbing over boxes or crawl under equipment stored in warehouses. It may include the ability to overtake and physically wrestle with a suspect at the time of arrest. He might have to jump out of a window or off of a porch, or to climb a ladder and onto a roof while in the process of a foot chase with a suspect. He may be required to carry heavy boxes or pieces of evidence from crime scenes [and] drag a body. . . . He may be required to help push a vehicle. . . .

The City argues that Daugherty fails to show that he is entitled to the disability discrimination protections of the MHRA because he was incapable of performing these essential functions of his job. The City asserts that all police officers are required to perform front-line officer duties and its evaluators determined that Daugherty cannot perform these tasks.

Daugherty admitted in his deposition that the captain's job might require front-line officer tasks, but he disputes that those tasks are essential functions of the captain's job. He argues that the captain's job descriptions provided to the doctor did not match the job descriptions in place when he was promoted to captain. Major Kozuszek's description was, in part, created concurrent to the time Daugherty was sent for a disability evaluation and added physical requirements, such as suspect chase and capture, that were not a part of the city's official written job description, which was basically supervisory. Daugherty points out that other officers testified that they also viewed the captain's position as supervisory in nature.

Daugherty had performed the captain's job since 1999 without being asked to submit to a fitness for duty evaluation. His

performance evaluation in April 2002 scored him satisfactory in the "Appearance/Fitness" category.[12] At Daugherty's termination appeal hearing, Chief O'Connor stated that, prior to the City's doctor's evaluation, there was no documentation or first hand observation that Daugherty was unable to effectuate an arrest or assist at an accident site. Chief O'Connor also admitted that Daugherty had passed all required firearm qualification tests. The City's doctor determined that Daugherty could perform at a heavy work demand level for 4 hours, and Daugherty's experts concluded that he was physically capable of performing his daily captain's duties and limited heavy work load duties.

The record reveals that there are genuine issues of material fact as to what were the essential functions of the captain's job. As such, this issue is an inappropriate ground for summary judgment.

### C. Application of the "Contributing Factor" Analysis

■ Having found that there are genuine issues of material fact regarding whether Daugherty has an MHRA-protected disability and the capacity to perform his job, this Court must now assess whether his claim survives summary judgment because there are genuine issues as to whether his perceived disability was a "contributing factor" in the City's termination decision.

The City maintains that it asked Daugherty to submit to a "fitness for duty" examination after his increasing absenteeism caused concerns that he was unable to perform the duties of a front-line officer. The City attempts to argue that Daugherty was rightfully terminated due to his poor pattern of attendance, but he alleges facts showing that it originally informed him that he was terminated only because his fitness for duty evaluations indicated he was incapable of performing front-line officer duties. Daugherty's taped conversation with Chief O'Connor mentions a discussion between Chief O'Connor and the City's attorney about getting Daugherty "off the street" by putting him in an "administration position only." His evidence showed that he was encouraged to take disability retirement to avoid losing his job as police captain.[13] The record also supports his complaint that he was the only similarly-situated officer to be sent for a "fitness for duty" examination.[14]

Viewing these facts in the light most favorable to Daugherty, as the standard of review requires, the record supports a finding that there are genuine issues of material fact regarding whether Daugherty was wrongly singled out for a fitness for duty evaluation and whether his perceived disability was a "contributing factor" in the City's decision to terminate him.

### Conclusion

The trial court erred in granting summary judgment on Daugherty's age and disability discrimination claims. His age discrimination claim avoids summary judg-

---

12. Daugherty's April 2002 performance review shows he was evaluated for "Appearance/Fitness" as "satisfactory," defined as "[c]onsistently maintains neat personal appearance and good physical health." His performance evaluation rated him at 3.42—slightly above satisfactory.

13. In 2001, Daugherty was encouraged to take disability leave by Major Kozuszek. Around the time of Daugherty's termination in 2002, Major Kozuszek and Chief O'Connor again encouraged him to take disability leave.

14. Daugherty's counsel questioned Chief O'Connor during his deposition about other officers that might have physical or medical limitations. Chief O'Connor attested that Daugherty was the only officer that was sent for testing because "[the City had] never experienced the problems unique to [Daugherty] with any other police officer."

ment because there are genuine issues of material fact as to whether his age was a "contributing factor" in his termination. His disability discrimination claim also survives summary judgment in that there are genuine issues of material fact regarding (1) whether he has an MHRA-protected disability because the City "regarded him as" disabled; (2) what were the essential functions of the captain's job; and (3) whether he was improperly singled out for a fitness for duty evaluation and whether his perceived disability was a "contributing factor" in his termination.[15]

The trial court's judgment is reversed, and the cause is remanded.[16]

All concur.

---

**15.** This Court's conclusion that there are genuine issues of material fact presented in Daugherty's disability claim relates only to the facts of this case. Nothing in this opinion precludes policies requiring sworn law enforcement officers, regardless of rank, to be capable of performing front-line officer duties. Nor does anything in this opinion preclude the enactment and proper and uniform enforcement of disability retirement policies.

**16.** The decision that Daugherty's claims survive summary judgment under the MAI 31.24 "contributing factor" analysis is not a declaration that he will prevail at trial. This Court's findings reflect only that the record in Daugherty's case reveals genuine issues of material fact that should be weighed by a trier-of-fact, thereby making summary judgment inappropriate.