# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2631

_____

| | | |
|---|---|---|
| Dru D. Smith, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Hy-Vee, Inc., | * | Western District of Missouri. |
| | * | |
| Appellee. | * | [PUBLISHED] |

_____

Submitted: March 9, 2010
Filed: October 12, 2010

_____

Before BYE, ARNOLD, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Dru D. Smith brought suit against her former employer, Hy-Vee, Inc., alleging sexual harassment and retaliation in violation of the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.055, 213.070. The district court[1] granted summary judgment in favor of Hy-Vee on Smith's sexual harassment claim. At trial on the retaliation claim, the district court excluded evidence of specific instances and details of the alleged harassment. The jury returned a verdict in favor of Hy-Vee. Smith appeals, arguing the district court erred in granting Hy-Vee's motion for summary

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

judgment on Smith's sexual harassment claim, excluding evidence of sexual harassment, and refusing to grant Smith a new trial. We affirm the judgment.

I

The record reveals the following facts, taken in the light most favorable to Smith. Smith was employed by Hy-Vee at its Englewood Road store in Kansas City, Missouri, from June 2004 to August 2006. She worked in various departments until late 2005 when she was transferred to the bakery. While employed in the bakery, Smith frequently worked with Sherri Lynch, a cake decorator. During this time, Lynch engaged in rude, vulgar, sexually charged behavior toward Smith. In February or March of 2006, Lynch told Smith to place two fingers next to hers. Lynch then rubbed her fingers against Smith's fingers and told Smith "[t]hat's what a penis feels like." From April 2006 to August 2006, Lynch molded genitalia out of dough, shoved them in Smith's face, and asked Smith if she knew what they were. In May 2006, Smith observed Lynch "dry humping" a male Hy-Vee manager. After the manager left, Smith said, "God, Sherri, it's like you practically raped him." Lynch replied "[n]o Dani, if I were going to rape someone, it would be like this." Lynch then pushed Smith up against a wall for ten to fifteen seconds while rubbing her hands and body up against Smith. In early August 2006, Lynch sculpted a penis out of dough and asked Smith if it was "too big?" Additionally, while Smith was employed in the bakery, Lynch smacked her on the buttocks approximately six times and, with the aid of another employee, put Barbie dolls in sexual positions and asked Smith if she knew what the positions meant.

Lynch also engaged in sexually charged conduct toward other women who worked at Hy-Vee. Smith observed Lynch kissing another female employee and smacking her on the buttocks. Lynch also "dry humped" another female employee. Based on these events, Smith believes Lynch is a lesbian or a bisexual. Another former Hy-Vee employee also believes Lynch may be bisexual. Lynch, who has been married to the same man for sixteen years and has two daughters, denies these claims.

In addition to the alleged conduct directed toward Smith and other female employees at Hy-Vee, Lynch also engaged in sexually charged activity toward male store employees. Examples of this conduct include: (1) Lynch made inappropriate sexual jokes with a store manager; (2) Lynch "dry humped" the same manager about once a week; (3) Lynch put her hands in this manager's pockets and said "hey there big boy"; (4) Lynch hit several male employees on the posterior on several occasions; (5) Lynch made sexual comments towards male employees; and (6) Lynch made sexually explicit cakes for male Hy-Vee employees. Lynch was not the only employee engaging in sexually charged behavior. Several employees engaged in sexual jokes and made penises or other body parts out of dough and cake.

Smith states she reported incidents of sexual harassment to at least twelve different managers and co-workers. She raised a total of 66 to 101 complaints to management when she felt inappropriate conduct occurred. Management failed to take action on these alleged complaints. Hy-Vee denies Smith ever complained. In June or July of 2006, Smith attended a meeting where she requested a transfer out of the bakery department; Hy-Vee denied this request. During the last two weeks before the termination of her employment, Smith complained to a number of people about sexual harassment and indicated she was going to call the Equal Opportunity Employment Commission (EEOC) or hire a lawyer.

Over the course of Smith's employment at Hy-Vee, store management and other supervisors documented a number of incidents where Smith did not act appropriately or questioned the authority of superiors. In the weeks leading up to her termination, Smith's immediate supervisor wrote her up for a series of mistakes involving cake and bagel orders made during the last two or three weeks of employment. Although Hy-Vee's store write-up policy gives employees an opportunity to sign a disciplinary write-up and submit a response, Smith was not given the opportunity to follow this procedure for the write-ups she received immediately before her termination.

Smith's employment was terminated on August 12, 2006. On approximately August 17, 2006, Smith filed a Charge of Discrimination against Hy-Vee with the EEOC and the Missouri Commission on Human Rights (MCHR). Both the EEOC and MCHR issued notices of Smith's right to sue. Smith filed claims for sexual harassment, in violation of Mo. Rev. Stat. § 213.055, and retaliation, in violation of Mo. Rev. Stat. § 213.070, against Hy-Vee in the Circuit Court of Jackson County, Missouri. On August 3, 2007, Hy-Vee removed the case to federal court. On March 27, 2009, the district court granted summary judgment in favor of Hy-Vee on the sexual harassment claim. Before the retaliation claim proceeded to trial, the trial court granted Hy-Vee's in limine motion to exclude evidence that detailed the sexual harassment from which Smith asserted she suffered.

II

Smith first challenges the district court's order granting summary judgment in favor of Hy-Vee on Smith's sexual harassment claim. We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the non-moving party. Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1068 (8th Cir. 2005). Summary judgment is appropriate only where there exists no genuine issue of material fact such that no reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The MHRA prohibits employers from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals ... sex ..." Mo. Rev. Stat. § 213.055.1(1)(a). When a claim is reviewed under the MHRA, "appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818 (Mo. 2007). However, "[i]f the wording of the MHRA is clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." Id. at 819. We apply Missouri law in this case.

"Sexual harassment creates a hostile work environment when sexual conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance." Barekman v. City of Republic, 232 S.W.3d 675, 679 (Mo. Ct. App. 2007). An employer is liable for the sexual harassment by a co-worker if the employer knew or should have known the harassment occurred and "failed to take prompt and effective remedial action." Mason v. Wal-Mart Stores, Inc., 91 S.W.3d 738, 742 (Mo. Ct. App. 2002). In order for Smith to prevail in a claim of hostile work environment sexual harassment, she must prove: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor in the harassment; (4) a term, condition, or privilege of her employment was affected by the harassment; and (5) Hy-Vee knew or should have known of the harassment and failed to take appropriate action. Barekman, 232 S.W.3d at 679. If Smith failed to present a material issue of fact on any of the aforementioned elements, Hy-Vee was entitled to summary judgment on Smith's sexual harassment claim. Id. at 679-80. In the present case, we address the third requirement, whether Smith's gender was a contributing factor in the harassment.

The Missouri Supreme Court, acknowledging the United States Supreme Court's decision in Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998), stated the MHRA, like Title VII, protects individuals against sexual harassment by members of either the same or opposite sex. Gilliland v. Mo. Athletic Club, 273 S.W.3d 516, 521 n.8 (Mo. 2009). Missouri courts have also looked to Oncale in determining whether gender was a "contributing factor" in cases of same-sex harassment under MHRA. See Barekman, 232 S.W.3d at 680. In Oncale, the Supreme Court stated that although same gender sexual harassment is actionable, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination because of ... sex.' " 523 U.S. at 80 (emphasis in original). In analyzing the same-sex harassment claim, the Court noted that it "ha[d] never held that workplace harassment ... is automatically discrimination because of

sex merely because the words used have sexual content or connotations." Id. Rather, the Court set out three evidentiary routes a plaintiff can use to show the conduct in a same-sex harassment claim was based on sex. Id. at 80-81. First, a plaintiff can show that the conduct was motivated by the co-worker's sexual desire for persons of the same sex. Id. at 80. Second, a plaintiff can show the harasser was motivated by a general hostility to the presence of the same gender in the workplace. Id. Third, a plaintiff may offer direct comparative evidence about how a harasser treated both males and females differently within a mixed-sex workplace. Id. at 80-81.

Smith argues that the evidence presented of Lynch's physical touching of her body and other sexual references were sufficient to satisfy the third element of a hostile work environment claim. We disagree. Viewing the facts in the light most favorable to Smith, the evidence does not show that Lynch was motivated by sexual desire toward Smith. Rather, there is no evidence that Lynch's conduct was motivated by a particular attraction to Smith because Lynch exposed both men and women to the same behavior. See Barekman, 232 S.W.3d at 681. There is also insufficient evidence to show Lynch was motivated by a general hostility to the presence of females in the workplace. Instead, the facts on record show that Lynch treated all employees, both male and female, in the same vulgar and inappropriate way. As such, Smith failed to present sufficient evidence that "the conduct ... constituted gender discrimination, and not just ... conduct ... 'tinged with offensive sexual connotations.' " Id. at 680 (quoting Oncale, 523 U.S. at 81). Therefore, the district court did not err in granting summary judgment to Hy-Vee on Smith's hostile work environment sexual harassment claim.

III

Smith next challenges the district court's order excluding "evidence regarding specific incidents and details of the alleged sexual harassment" from the trial of her retaliation claim. But Smith does not say in her brief before our court precisely what evidence she would have offered, so it is impossible for us to determine what effect

-6-

its exclusion might have had. In her opposition to Hy-Vee's motion in limine, moreover, she said only that she wanted to "talk generally of who harassed her, including Ms. Lynch" and wanted to show that she "was harassed by Sherri Lynch, i.e., including that she was improperly touched." This seems to us to imply that she had no objection to the motion in limine except for certain matters regarding her interactions with Ms. Lynch. Hy-Vee replied that it had no objection to Smith identifying Lynch as a harasser and testifying that Lynch "touched her inappropriately," and Smith in fact did both those things at trial. We think that Smith therefore effectively waived any objection to the motion in limine except for matters for which it developed that she was later allowed to offer evidence to the jury. So there would have been no error in granting the motion.

In addition, Smith's failure to make an offer of proof with respect to any evidence that was excluded in limine is fatal to her assignment of error. Fed. R. Evid. 103(a) and (a)(2) provide that "[e]rror may not be predicated upon a ruling which ... excludes evidence unless ... the substance of the evidence was made known to the court by offer [of proof]," and we have held repeatedly that to preserve an evidentiary issue for appeal an offer of proof is necessary, even if the district court grants a motion in limine. See, e.g., Dupre v. Fru-Con Engineering, Inc., 112 F.3d 329, 336 (8th Cir. 1997); Keeper v. King, 130 F.3d 1309, 1315 (8th Cir. 1997). While these cases predate an amendment to Rule 103 that occurred in 2000, that amendment had no effect on the part of the rule that bears on offers of proof except to excuse a failure to renew one: The point we make here is that no offer of proof was ever made, not that one was not renewed. As the Advisory Committee Notes observe, the amendment applies "when the party has otherwise satisfied the ... offer of proof requirement of Rule 103(a)." Though we stated in Moran v. Clarke, 296 F.3d 638, 649 (8th Cir. 2002 (en banc)), that an offer of proof is necessary "unless the evidence was excluded pursuant to a motion in limine," we cited no cases in support of this proposition and we don't believe that the court intended to overrule our clear, contrary precedents on the matter, especially without discussion. In fact, the matter of whether a motion in

limine had been made does not seem to have been in issue in Moran, so we think that the assertion there about offers of proof being unnecessary was inadvertent and dictum. The fact that the plain language of the rule provides otherwise makes us even more confident of this reading of the case.

Fed. R. Evid. 103(d) does preserve the possibility that an order excluding evidence may be reviewed on appeal for plain error despite the absence of a proper offer in the trial court. Smith does not ask for plain-error review and we don't think in any event that such a review would avail her. The district court excluded detailed evidence of the sexual harassment from the retaliation trial because the sexual harassment claim itself had been dismissed on summary judgment, and it concluded that the relevance of the details of the harassment that occurred was only marginal while its potential for unfair prejudice to Hy-Vee was large. See Fed. R. Evid. 403. Given the highly deferential standard that would govern our review of this holding, see Fed. R. Evid. 403; Olson v. Ford Motor Co., 481 F.3d 619, 623 (8th Cir. 2007), we think that there is no prospect that there was a "clear error" here, much less one that would allow us to give plain-error relief, see Rahn v. Hawkins, 464 F.3d 813, 819 (2006).

### III.

Finally, because there is nothing in this record that could lead us to conclude that a miscarriage of justice occurred, we hold that the district court did not abuse its discretion in denying Smith's motion for a new trial. See Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 867 (8th Cir. 2004).

We therefore affirm the judgment.

BYE, Circuit Judge, dissenting.

I respectfully dissent. I agree with the majority opinion as to the district court properly dismissing Smith's sexual harassment claim. Where I part ways with my colleagues is in their affirmance of the district court's exclusion of "evidence regarding specific incidents and details of the alleged sexual harassment." Because my belief is Smith did not waive the issue and the district court abused its discretion in excluding this key evidence, I would reverse the district court's grant of Hy-Vee's motion in limine.

I

As a threshold matter, I cannot agree with the majority's finding as to Smith having waived her challenge to the motion by her briefing of the issue in connection with the motion in limine and by failing to make an offer of proof in the district court. The majority views Smith's trial strategy as limited to revealing Sherri Lynch's identity and the fact of harassment, concluding Smith "effectively waived any objection to the motion in limine except for matters for which it developed she was later allowed to offer evidence to the jury." *Supra* at 7. In my view, such interpretation of Smith's trial plans is unfair. A quick reading of Smith's response to Hy-Vee's motion in limine confirms Smith wanted to introduce more than the mere fact of harassment and the identity of the offender. Rather, she pointed to Hawkins v. Hennepin Technical Center, 900 F.2d 153, 155 (8th Cir. 1990), in support of her argument she should be permitted to introduce some, albeit not all, *details* of the underlying incidents to provide context for her retaliation claim. See Smith's Response to Hy-Vee's Mot. in Limine, Appellant's App'x at 840. Absent the ability to discuss the incidents of harassment in some detail, Smith argued, she would be "hamstrung in proving that she had a reasonable, good faith basis for her complaints, which is an element of retaliation." Id. at 838. In moving to preclude testimony as to Lynch being married, Smith similarly asserted she needs proof of a "reasonable

basis for complaining she was 'dryhumped,' and being rubbed and touched over her upper body." Id. at 839-40.

Nor did Hy-Vee itself perceive Smith's response as forfeiting the point. While Hy-Vee properly recognized Smith wanted to testify to sexual harassment incidents herself, Hy-Vee did not raise the waiver defense – either in the district court or in the circuit court. Given these facts, the majority's insistence on a more detailed articulation of Smith's evidentiary strategy in her response brief is unwarranted.

The same is true concerning the majority's decision on the offer of proof. Under the current version of Federal Rule of Evidence 103,

> [e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and
> . . .
> In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

> Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Fed. R. Evid. 103(a)(2).

The language of the Rule exempting a party from having to renew the offer of proof following a definitive ruling by the court was added in 2000, in recognition of the reality "[w]hen the ruling is definitive, a renewed . . . offer of proof at the time the evidence is to be offered is more a formalism than a necessity." Fed. R. Evid. 103, cmt. 2000 Amendment. Indeed, "[m]otions *in limine* are designed to avoid the delay

-10-

and occasional prejudice caused by objections and offers of proof at trial; they are more useful if they can serve these purposes, which they do only if . . . offers of proof . . . can be foregone safely." Wilson v. Williams, 182 F.3d 562, 566 (7th Cir. 1999). Thus, where a judge has made a definitive ruling before trial, an objection is "unnecessary to prevent error, and it may do little other than slow down the trial." Id. One additional benefit of bringing a motion in limine in advance of trial is allowing parties to modify their trial strategy depending on the outcome of the motion. Requiring an offer of proof at trial would deprive litigants of such a benefit. Id.

Consistent with the purposes of the 2000 amendment, the Eighth Circuit has previously noted "a party must properly preserve an issue below with an offer of proof *unless the evidence was excluded pursuant to a motion in limine*." Moran v. Clarke, 296 F.3d 638, 649 (8th Cir. 2002) (en banc) (emphasis added). The majority attempts to discount the weight of this en banc opinion by pointing to two opinions which both predated the 2000 amendment, see Dupre v. Fru-Con Eng'g, Inc., 112 F.3d 329, 336 (8th Cir. 1997); Keeper v. King, 130 F.3d 1309, 1315 (8th Cir. 1997), and were inconsistent with the law then in place, see Charter v. Chleborad, 551 F.2d 246, 248-49 (8th Cir. 1977) (holding that a party was not required to make an offer of proof where the court was "aware of the general nature of the evidence to be offered"). Recognizing the timing problem, the majority contends the 2000 amendment did nothing to alter Rule 103's substantive standards, and clarifies as to its main contention about "no offer of proof was ever made, not that one was not renewed." *Supra* at 7.

I disagree as to Smith's pre-trial presentation of evidence on the record being inadequate. The purpose of the offer of proof is "(1) to inform the [trial] court and opposing counsel of the substance of the excluded evidence, enabling them to take appropriate action; and (2) to provide an appellate court with a record allowing it to determine whether the exclusion was erroneous and whether [the] appellant was prejudiced by the exclusion." Kline v. City of Kansas City, 175 F.3d 660, 665 (8th

Cir. 1999) (internal quotation marks and citation omitted). Hy-Vee's briefing of the motion in limine, Smith's response thereto, and the trial court's order on the issue satisfy both of these purposes, and it is difficult to imagine what more Smith could have done to make her point. See also Black's Law Dictionary 1190 (9th ed. 2009) (explaining that an offer of proof consists of "(1) the evidence itself, (2) an explanation of the purpose for which it is offered (its relevance), and (3) an argument supporting admissibility"). In addition to the parties' articulation of proffered evidence in connection with the motion in limine, the district court gained familiarity with the substance of Smith's allegations when adjudicating the parties' dispositive motions. See Germano v. Int'l Profit Ass'n, Inc., 544 F.3d 798, 801 (7th Cir. 2008) (stating that briefing of the issue in a response to a motion for summary judgment satisfied requirements of Rule 103(a)(2)). Thus, Smith fulfilled her duty of presenting the issue "in a meaningfully developed manner," Moran, 296 F.3d at 649 (quoting Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n.1 (7th Cir. 1996)), and did not forfeit its substantive review.

II

This court reviews evidentiary rulings for a clear abuse of discretion. Harris v. Chand, 506 F.3d 1135, 1140 (8th Cir. 2007). A district court abuses its discretion if "evidence of a critical nature is excluded and there is 'no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted.'" Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 653 (8th Cir. 2003) (quoting Adams v. Fuqua Indus., Inc., 820 F.2d 271, 273 (8th Cir. 1987)).

Under Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Although a district court has "wide discretion in admitting and excluding evidence," Harris, 506 F.3d at 1139,

blanket evidentiary exclusions can be especially damaging in employment discrimination cases, where the plaintiff faces the difficult task of convincing the fact-finder to disbelieve the motives articulated by the employer. Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988), overruled in part on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

In order to determine whether and to what extent the excluded evidence was probative, it is necessary to review the relevant substantive law. The Missouri Human Rights Act (MHRA) states:

> It shall be an unlawful discriminatory practice: . . . [t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter . . . .

Mo. Rev. Stat. § 213.070(2).

The Supreme Court of Missouri explained a claim for retaliation shall be proved "by showing the elements required by the MHRA, rather than by reference to cases such as McDonnell Douglas analyzing violations of federal law." Hill v. Ford Motor Co., 277 S.W.3d 659, 665 (Mo. 2009). Therefore, in order for Smith to prove retaliation in violation of the MHRA, she must show: (1) she complained of sexual harassment; (2) the employer took an adverse action against her; and (3) a causal relationship between the complaint and the adverse employment action. Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 245 (Mo. Ct. App. 2006).

Missouri law suggests that to state a claim of retaliation under the MHRA, a plaintiff must show she reasonably believed the conduct complained of violated the

-13-

MHRA. This court has adopted the "reasonable belief" standard in Title VII cases, see Peterson v. Scott County, 406 F.3d 515, 525 n.3 (8th Cir. 2005) (stating that "plaintiffs who reasonably believe that conduct violates Title VII should be protected from retaliation, even if a court ultimately concludes that plaintiff was mistaken in her belief"), as well as in a case of retaliation under MHRA, albeit based on the assumption that Missouri law parallels federal law in this area. See Stuart v. Gen. Motors Corp., 217 F.3d 621, 634, 637 (8th Cir. 2000). In another case, the Missouri Court of Appeals affirmed a grant of summary judgment in favor of the defendant on the plaintiff's sexual harassment claim, but held the evidence provided a trial-worthy issue on the plaintiff's retaliation claim, thereby implying the relevant criterion is not the actual violation of the statute. Barekman v. City of Republic, 232 S.W.3d 675, 680-82 (Mo. Ct. App. 2007). Conversely, although one could argue a plaintiff simply needs to complain of anything he believed to be an illegal practice under the MHRA, such an interpretation would contradict the plain text of the statute, which requires the practice complained of to be "prohibited by the chapter." Mo. Rev. Stat. § 213.070. Thus, the trial court acted properly when it applied the "reasonable belief" standard to the MHRA and instructed the jury as such.

Details of workplace harassment are probative to a claim of retaliation because an employee must show that the subject matter of which she complained could be reasonably construed as a "prohibited practice" under the MHRA – in this case, sexual harassment. See Barekman, 232 S.W.3d at 681-82. Details of harassment endured by an employee are also potentially probative to establishing retaliation because the more severe and pervasive the harassment, the more likely it is that an employer will have an unlawful motive for terminating employment. Hawkins, 900 F.2d at 156 ("[A]n atmosphere of condoned sexual harassment in a workplace increases the likelihood of retaliation for complaints in individual cases."). More importantly, the more severe and accepted the harassment is in the workplace, the more likely an employee is to complain.

-14-

To be sure, this court has recognized the risk of unfair prejudice inherent in providing details of harassment at a trial for retaliation. By allowing evidence of harassment at trial, there is a risk the evidence could "encourage the jury to grant the plaintiff relief on the grounds she suffered" from the prohibited conduct, not because the company retaliated against the employee for complaining. Easley v. Am. Greetings Corp., 158 F.3d 974, 976 (8th Cir. 1998). The Eighth Circuit has decided two cases which are sufficiently similar to this case so as to warrant close examination. Both cases were decided under federal law and therefore guide our analysis to the extent the MHRA mirrors Title VII. See Hill, 277 S.W.3d at 665.

In Hawkins, a woman brought a claim of retaliation against her former employer, alleging she was punished for making complaints of sexual harassment. 900 F.2d at 154. At trial, the parties disputed whether sexual harassment actually occurred. The district court prohibited the plaintiff from "introducing any evidence of alleged acts of sexual harassment committed against herself or others." Id. at 155. When referring to specific incidents which elicited complaints, the plaintiff was only allowed to respond she was transferred "[b]ecause [she] felt [she] was being harassed." Id. at 156. The plaintiff appealed an adverse jury verdict, and this court reversed and remanded for a new trial. The court stated that "some detail about the alleged harassment is necessary to provide a context for the complaints made" in a retaliation claim. Id. The court concluded the district court abused its discretion by limiting the proof of unlawful conduct to "bare allegations" because there must be some indication of the underlying incidents in order for a plaintiff to fully present her claim. Id.

Similarly, in Easley, a woman brought a claim of retaliation against her employer. 158 F.3d at 975. At trial, there was no dispute that sexual harassment occurred; the defendant conceded the point. The district court excluded specific testimony discussing the plaintiff's harassment because it found the prejudicial effects would outweigh the probative value. The "jury was told generally of the sexual

-15-

harassment, but the plaintiff was not permitted to go into a blow-by-blow account of [the] misconduct." Id. at 976 (quotation marks omitted). In other words, the plaintiff was able to discuss generally what occurred in the workplace, but could not discuss explicit details. The jury returned a verdict in favor of the employer. On appeal, the court concluded the district court acted within its discretion in excluding evidence, under Rule 403, of specific instances of sexual harassment.

Hawkins and Easley are distinguishable in two important ways. First, the cases differ on whether sexual harassment occurred. In Hawkins, the employer argued sexual harassment did not occur; in Easley the fact of harassment was undisputed. Also, the amount of evidence which was submitted at trial differed between the two cases. In Easley, the court allowed the plaintiff to discuss generally the harassment that occurred. However, in Hawkins the district court ruled the plaintiff could not introduce any evidence of the alleged sexual harassment. In comparing these two cases, it is clear the "bare allegations" do not allow a plaintiff to fully present her retaliation claim. However, when it is undisputed that harassment has occurred, the probative value of detailed evidence of sexual harassment is diminished.

Returning to the evidentiary issue at hand, I would conclude the district court, like the district court in Hawkins, abused its discretion in excluding the evidence of specific instances of sexual harassment. Unlike in Easley, where it was undisputed as to harassment having occurred, the issue of whether Lynch's conduct constituted harassment was hotly disputed. This is evidenced by the summary judgment hearing where Hy-Vee argued, under the authority of Clark County School District v. Breeden, 532 U.S. 268 (2001), that the district court should conclude that no reasonable person could have believed the incidents complained of by Smith violated the MHRA. Although the district court rejected this argument, the court gave the instruction that the plaintiff needed to prove she "reasonably and in good faith believe[d]" the conduct was sexual harassment. Thus, Smith still had the burden of proving at trial the conduct she complained of violated the MHRA. During the course

-16-

of the trial, however, the district court's evidentiary ruling prevented Smith from giving details of the harassment of which she complained. The only testimony Smith was allowed to introduce regarding the "dry-humping" incident was that in May 2006, there was a "particular incident involving Ms. Lynch that [she] reported to management" as she thought the incident was serious. Trial Tr. at 353. The district court's ruling on the motion in limine prevented the jury from hearing the basis on which to decide whether Smith was reasonable in believing the conduct she complained of was prohibited by the MHRA. Therefore, the evidentiary restriction imposed by the district court unfairly prevented Smith from proving her case, which is an abuse of discretion. See Hawkins, 900 F.2d at 155-56.

## III

I would reverse the judgment of the district court in part and remand for further proceedings.

_____